# Grubb's Appeal.

1. The proper construction of a deed is not a subject of equity jurisdiction, and where there is neither averment nor proof of fraud, accident or mistake, a court of equity cannot be asked to reform a deed.

2. A person who is not a tenant in possession, but possesses a right to dig ore, is not guilty of committing a waste or trespass when he takes out more ore than his contract or his right calls for, and a court of equity cannot restrain him by injunction.

3. Nor will a court of equity in such a case decree an account where the account is a mere matter of charge for a certain number of tons of ore, with no entries on the other side of the account. This is clearly the subject of an action of assumpsit at law.

May 9th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

[Grubb's Appeal.]

Appeal from the decree of the Court of Common Pleas of *Lancaster county*: Of May Term 1878, No. 132.   In Equity.

Bill in equity filed June 25th 1875 by Clement B. Grubb against Alfred Bates Grubb.   The bill averred in substance, that in 1845 the plaintiff and his brother Edward were co-tenants in fee of Mount Hope Furnace, in Lancaster county, and also, with others, co-tenants of the " Cornwall Ore-banks "; that at that time Edward Grubb and defendant, A. Bates Grubb, were copartners in the manufacture of iron at Mount Hope Furnace; that in 1845 plaintiff and defendant agreed that plaintiff's individual half of Mount Hope should be conveyed to defendant, " together also with the right, title and interest, so far as the said Alfred Bates Grubb's right under this conveyance in the said Mount Hope Furnace is interested and concerned, of them, the said Clement B. Grubb and Mary Ann Grubb, his wife, to raise, dig up and carry away, for the use and advantage of said furnace, iron ore out of and from * * * the ' Cornwall Ore-banks ' * * * for the purpose only of procuring ore for the said Mount Hope Furnace * * * ; " that Edward Grubb and defendant operated the furnace as copartners until the death of Edward, in 1867, during which period the ore was obtained from said banks; that in 1870 the heirs of Edward began certain proceedings in partition against defendant, the result of which was that the defendant, in April 1874, became the sole owner of said Mount Hope Furnace; that the defendant recently asserted a right to take ore from said banks, without limit, instead of a moiety thereof.   The bill further alleged that this claim to a full supply instead of a moiety was contrary to the agreement of purchase and the construction of the deed; that plaintiff owned one-twelfth of said Cornwall banks, and that he had articles of agreement with his co-proprietors, under which the ore taken by defendant was considered as taken by plaintiff, and was at his exclusive cost; that the wrong of taking the ore being continuous and recurring would cause a multiplicity of suits, against which relief could be had in equity alone, and it therefore prayed that it should be decreed that defendant's right is to take but one-half of the ore used at Mount Hope: that if the words of the deed of 1845 did not clearly confine the defendant's right to a half supply, the deed should be reformed; that defendant be decreed to account to the proprietors of Cornwall for one-half of the ore; that defendant be decreed to submit to such method of determining the rights involved as is necessary to protect plaintiff, and in the meantime that he be enjoined from acting under his grant; that plaintiff should have such further relief as would prevent a surcharge of the grant made or intended to be made.

The defendant in his answer set forth a title to show that the one-sixth interest in Cornwall banks was a part of Mount Hope estate and they were considered as one estate, and that by virtue

of the defendant's ownership of said estate he had a right to an unlimited supply of ore from said banks, and that the deed of 1845 contemplated a right to a full supply of ore therefrom. The answer further averred that the matters alleged in the plaintiff's bill were not such as entitled plaintiff to relief in equity.

The case was referred to George Nauman, Esq., as examiner and master, who upon the question of jurisdiction, reported that "as no fraud, accident or mistake has been proved, as no evidence has been laid before him which would call for the cancellation or reformation of any paper, and as there are no mutual or complicated accounts between the parties, the jurisdiction of a court of equity, in this case, is to say the least, doubtful." He further reported that believing "so far as he can ascertain it from the language of the deed and the circumstances of the parties at the time of making it, that the intention was that a right should be granted to a full supply of ore, and that this right should be annexed to the ownership of the individual half of Mount Hope Furnace, he recommends that the bill should be dismissed." Both plaintiff and defendant excepted to this report. The court, Livingston, P. J., delivering the opinion, sustained the exceptions of the plaintiff and entered a decree that the "interest and right of defendant to take ore from said Cornwall ore banks is to the extent of a moiety only" commensurate with the interest of Mount Hope Furnace, and that defendant should account for the ore taken in excess of the amount he was thus entitled to take. The amount then due was ascertained and reported by a master, and the court entered a decree that said amount should be paid by defendant to plaintiff.

On the question of jurisdiction the court said: "By the Act of June 16th 1836, sect. 13, the legislature has declared that the Supreme Court and the several courts of common pleas of this Commonwealth should have the jurisdiction and powers of a court of chancery, with reference to the matters therein enumerated and specified. And that the Supreme Court when sitting in banc, in the city of Philadelphia, and the Court of Common Pleas for said city and county, shall, besides the powers thereinbefore enumerated, have the power and jurisdiction of Courts of Chancery, so far as relates to—

"'The prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals.' And by the Act of February 14th 1857, the legislature declares, 'that the several Courts of Common Pleas of this Commonwealth, in addition to the powers and jurisdiction heretofore possessed and exercised, shall have the same chancery powers and jurisdictions which are now by law vested in the Court of Common Pleas or District Court of the city and county of Philadelphia,' and provides for an appeal from their decrees to the Supreme Court.

[Grubb's Appeal.]

"It may, therefore, be said, as decided in Denny v. Brunson, 5 Casey 382, &c., 'that by the 13th section of the Act of 16th of June 1836, the equity jurisdiction of the courts therein specified, and those to which it has been extended by subsequent legislation, extends to' 'the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals.'

"And waste, as an act contrary to law, is within the purview of the legislation of this Commonwealth on the equitable powers of the courts, and the jurisdiction conferred expressly extends to its prevention or restraint, and all the Courts of Common Pleas in the state now possess, in addition to their writs of estrepement, the power to restrain and stop waste by injunction.

"In Scheetz and Stout's Appeal, 11 Casey 88, &c., it is decided that 'the Courts of Common Pleas have jurisdiction in equity to restrain by injunction repeated acts of trespass upon the legal rights of a complainant.'

"In Unangst's Appeal, 5 P. F. Smith 128, it was held that a corporation obtaining a concession to enter, on condition of refraining from a particular injury, in its nature irreparable and not readily estimated in damages, forfeits its license, when it violates the condition, and should be restrained till it does equity.

"And in Stockdale v. Ullery, 1 Wright 486, it was held that the courts, in granting injunctions, are not restricted to acts 'contrary to law,' but may exercise this power to restrain acts contrary to equity also; equity being so much a part of the law of Pennsylvania as that the word 'law' often means both law and equity, or either.

"The equity powers and jurisdiction of courts being no longer confined to cases of accident, mistake, fraud, the cancellation or reformation of papers, or to complicated accounts between parties, but having, as we have seen, been extended and made to apply to the 'prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals, we think the powers and jurisdiction of a court of equity are sufficiently broad and comprehensive to extend to and embrace the controversy or case as here developed."

From a decree in accord with this opinion the defendant took this appeal, alleging, inter alia, that the court erred in holding that the case was within the jurisdiction of a court of equity.

*S. H. Reynolds, Wayne McVeagh* and *A. Slaymaker*, for appellant.—The opinion of the learned court below entirely ignores the well settled distinctions between the powers and jurisdiction of courts of equity and those of the common-law courts, and is founded upon what seems to us a misconception of the scope and

effect of the authorities upon the subject. The jurisdiction of courts of equity in trespass, waste, &c., to which it refers, attaches only where the acts complained of affect rights of property already clearly established by admission or otherwise, and does not warrant those courts in proceeding in the first instance to determine as to such rights when in dispute.

The Acts of Assembly conferring equity powers on the courts of common pleas do not and could not, under the Constitution of the state, interfere with the rights of parties to have their controversies determined by the usual common-law methods in any other than that class of cases of which courts of chancery—where there were such courts—had previously had jurisdiction : North Penna. Railroad Co. v. Snowden, 6 Wright 488; Norris's Appeal, 14 P. F. Smith 275; Tillmes v. Marsh, 17 Id. 507.

The right of the plaintiff must be acknowledged or established at law before he can resort to a chancellor : Rhea v. Forsyth, 1 Wright 503; Norris's Appeal, *supra;* City of Philadelphia's Appeal, 28 P. F. Smith 33; Brown's Appeal, 12 Id. 17; Haines's Appeal, 23 Id. 169; Minnig's Appeal, 1 Norris 373.

Though the bill contains a prayer for an account it lays no foundation for one, and seeks it only as a consequence of the other relief which it prays, and where the accounts are all " on one side, and no discovery is sought or required, courts of equity will decline to take jurisdiction:" Gloninger v. Hazard, 6 Wright 389; Passyunk Building Assoc. Appeal, 2 Norris 441.

But again, no case can be cognisable in equity, for which there is a complete remedy at law : Clark's Appeal, 12 P. F. Smith 447; Brown's Appeal, Id. 17; Watson v. Sutherland, 5 Wall. 74; Strasburg Railroad Co. v. Echternacht, 9 Harris 220; Gallagher v. Fayette County Railroad Co., 2 Wright 102; Minnig's Appeal, *supra.*

*Thomas E. Franklin, George M. Kline, H. M. North* and *D. W. Sellers,* for appellee.—To stay waste courts of equity will interfere by injunction : 1 Story's Eq. Jurisprudence 515–518; Jesus College v. Bloom, Ambler's Rep. 54; Bispham's Equity, scets. 434, 435, 436; Bishop of Winchester v. Knight, 1 Peere Wms. 407; L. Lansdowne v. Lansdowne, 1 Madd. Ch. Rep. 116; Thomas v. Oakley, 18 Ves. 184; Gibson v. Smith, 2 Atk. 182. It is not necessary to wait till waste is actually committed, where the intention appears and the person insists on his right to do it: Perrot v. Perrot, 3 Atk. 94; Packington's Case, Id. 215; Coppinger v. Gubbins, 9 Irish Eq. 310; Wellesley v. Wellesley, 6 Sim. 497; Duke of Leeds v. P. Amherst, 14 Id. 357; Morris v. Morris, 15 Id. 509; and see 1 Add. on Torts 316, and authorities there cited.

And waste, as an act contrary to law, is within the purview of

[Grubb's Appeal.]

our legislation on the equitable powers of our courts, and the jurisdiction conferred expressly extends to its prevention or restraint: Denny v. Brunson, 5 Casey 385.

So, in regard to repeated acts of trespass upon the legal rights of complainant, in obstructing a stream of water flowing to his mill: Scheetz's Appeal, 11 Casey 88. And to the violation by a railroad company of the condition on which a concession to enter was granted: Unangst's Appeal, 5 P. F. Smith 128; Carty v. Shields, 5 W. N. C. 241; Gass's Appeal, 23 P. F. Smith 47. The equitable jurisdiction conferred by the Acts of Assembly is a valuable, indeed indispensable one, and ought to be extended by every interpretation of which the words are susceptible: Wesley Church v. Moore, 10 Barr 280; Kirkpatrick v. McDonald, 1 Jones 393; Yard v. Patton, 1 Harris 282.

The case being properly cognisable in equity, the court, sitting in equity, having acquired jurisdiction, will inquire into and determine all matters necessary to decide the rights of the parties to the subject in controversy: McGowin v. Remington, 2 Jones 56; McCallum v. Germantown Water Co., 4 P. F. Smith 40; Allison and Evans's Appeal, 27 Id. 221.

Mr. Justice PAXSON delivered the opinion of the court, June 23d 1879.

The appellant denies the jurisdiction. As this point, if well taken, disposes of the present proceeding, we will consider it first.

The bill stripped of all unnecessary matter, is a proceeding to compel the appellant to pay for one-half the ore hauled from the Cornwall ore-banks to the Mount Hope Furnace. Whether he ought to pay for it depends upon the construction of the deed of 1845 of Clement B. Grubb and wife to Alfred Bates Grubb. These are both legal questions properly belonging to a court of law. If this were all, we would at once dismiss the bill for want of jurisdiction. But as some other matters have been introduced into it, evidently with the view of bringing the case within the cognisance of a court of equity, we will consider them briefly. They are first— That the claim of a full supply, instead of a moiety, is contrary to the agreement of purchase, to the construction of the deed, and to the continuous and uninterrupted usage thereunder, and that if the terms of the license are vague the deed should be reformed. In support of this averment there is the prayer, "that if the words of the deed of 1845 do not clearly confine the defendant's right to a half supply, the deed should be reformed." It is sufficient to say in regard to this that the proper construction of the deed is not a subject of equity jurisdiction, and that as to its reformation, there is neither averment nor proof of fraud, accident or mistake.

The second averment is, "That the wrong of taking all the ore is one continuous and recurring, would cause a multiplicity of suits,

against which relief could be had in equity only." It was strongly urged that this averment gave the court jurisdiction under that provision of the Act of 16th June 1836, conferring equity powers upon the Courts of Common Pleas, which provides that such powers shall include "the prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals." It is not contended that the appellant is doing any act contrary to law or prejudicial to the community. Has he done anything prejudicial to the rights of the appellee which is sufficient to give a court of equity jurisdiction? The contention of the appellee is that the case comes within the same rule as waste, which may be restrained by injunction as well as by writ of estrepement, and of continuing trespasses, which equity will restrain to prevent multiplicity of suits; and Denny *v.* Brunson, 5 Casey 385, Scheetz's Appeal, 11 Id. 88, and other cases were cited in support of this view. I have no fault to find with the authorities cited, but their application is not manifest. No question of waste is raised by this record. Waste is spoil or destruction done or allowed to be done to houses, woods, lands or other corporeal hereditaments by the tenant thereof, to the prejudice of the heir, or of those in reversion or remainder. By the Act of 27th of March 1833, Pamph. L. 99, the provisions of the second section of the Act of 2d April 1803, restraining waste, are extended to quarrying and mining. But it has never been held that a person who is not a tenant in possession, but possessing a right to dig ores, is guilty of committing waste when he takes out more ore than his contract or his rights call for. Nor does the case come within the rule of repeated trespasses for the reason that the appellant is not a trespasser. His right to dig ore at the Cornwall banks is not disputed. The question whether he has a right to a whole supply for his furnace or only a half is another matter, and has no bearing upon the question of trespass. If his right is limited to a half supply, and as to this we express no opinion, it becomes a mere question of accounting for the surplus. I am of opinion that the question of a half supply will be found to be full of practical difficulties when it comes to be established, if it ever shall be. For the present it is sufficient to say that the mere fact, if it exists, that the appellant has taken more ore than he was entitled to under the deed of 1845, does not make him a trespasser. Even if it did the equity jurisdiction of the court would not attach in the face of the appellant's denial of the appellee's right. A bill in equity is not a panacea. It was never intended, nor has it ever been used to settle disputed rights in trespass. Where the right is clear it will restrain the commission of repeated acts of trespass on the sole ground of preventing a multiplicity of suits.

There is the further prayer that the appellant be decreed to account to the proprietors of Cornwall for one-half the ore. The

appellee is the only one of the proprietors of Cornwall who is a party to the bill. Even if they had been joined as plaintiffs, the account is a mere matter of charge for certain number of tons of ore, with no entries on the other side of the account. It was clearly the subject of an action at law, and the appropriate form of action is assumpsit.

These are substantially all the points that need to be discussed. There is a growing disposition on the part of the bar throughout the state to favor equity practice, culminating in the filing of bills in many instances where the jurisdiction is at least doubtful. We were compelled at the last term of the Western District to dismiss a bill of our own motion for this reason. Orders and decrees in equity where there is no jurisdiction, are simply *coram non judice.*

We are clear that this bill must be dismissed upon this ground. If any authority were needed, it may be found in the North Penna. Railroad Company *v.* Snowden, 6 Wright 488, and Norris's Appeal, 14 P. F. Smith 275. There are several other cases to the same point, but those cited are sufficient.

> The decree is reversed and the bill dismissed for want of jurisdiction; the costs to be paid by the appellee.