James G. Booher et al., Appellants, *v.* W. T.
Browning et al.

*Equity—Jurisdiction.*

A bill in equity will not lie to compel the removal or to restrain the operation of a narrow gauge railroad, where defendants constructed the road under a grant to search for, dig and carry away minerals, and where the whole controversy turns upon the construction of the deed containing these grants. Whether the terms of the grant have been exceeded or not is a legal question and should be determined in a court of law.

Argued April 24, 1895.   Appeal, No. 140, Jan. T., 1895, by plaintiffs, from decree of C. P. Huntingdon Co., Dec. T., 1893, No. 69, dismissing bill in equity.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity to compel the removal of a narrow gauge railroad.

FURST, P. J., filed the following opinion:

### "FINDINGS OF FACT.

" First. Complainants are the heirs at law of one Joshua Booher, deceased, and the owners as tenants in common of the land described in the bill.

" Second. The respondents are the owners of a tract of 103 acres of ore land and timber, purchased from Joshua Booher, complainants' father, on Nov. 12, 1883, which was duly conveyed to them by deed entered of record, etc.

" This tract adjoins complainants' lands on the south.

" Third. The complainants' lands are composed of three several parcels, designated as follows: (a) A tract of 69 acres, upon which Joshua Booher and family resided during his lifetime; (b) a tract of 32 acres adjoining on the east, and (c) a tract of 17 acres adjoining homestead tract on the south, all of which is shown by a diagram offered in evidence and hereto attached.

" Fourth. The 17-acre tract is a rough piece of land, lying along the side of the mountain.   It contains deposits of ore, some timber, but is not used as farm land, and we think cannot be.   It is uncultivated land.

" Respondents have opened a valuable ore mine on their land, and the ore therefrom is transported to the Rockhill furnaces, a few miles east from this land, the only furnaces in the neighborhood.

" Sixth. Joshua Booher died Nov. 29, 1888, leaving complainants as his sole heirs at law; his widow is also dead.

" Seventh. In November, 1890, respondents began the building of a railroad from their ore mines, so as to connect with the furnaces aforesaid, for the purpose of transporting their ore to the said furnaces.   It was finished in the spring of 1891.   This railroad passes across the 17-acre lot eastward, and also across

the southern end of the 30-acre lot, and connects with the East Broad Top Railroad. The exact length of respondents' railroad is not given in the evidence; it, however, is a short road, perhaps in the neighborhood of one or two miles; this fact is not proven, and, therefore, we do not report it as a material fact in the case.

" Eighth. There is a roadway of a private nature running from the neighborhood of respondents' lands north across the 17-acre and 69-acre lots, to a public road running east and west, across the 69-acre lot, both passing in close proximity to the house of complainants on the 69-acre lot.

" Ninth. This public road continues eastward and is intersected by respondents' railroad at a point a little distance east of the 30-acre lot.

" Tenth. Complainants have instituted an action of trespass against these respondents in the court of common pleas of this county to No. 26, December term, 1893, to recover damages for the alleged trespass complained of in this bill.

" This suit was instituted on the 15th day of November, 1893. It is as yet undisposed of. The bill in equity was filed Nov. 22, 1893.

" Eleventh. The respondents deny that they have committed any trespass upon complainants' lands. They also deny that a court of equity has any jurisdiction under the bill filed and the facts proven. They also aver that an action of trespass is still pending for the same alleged trespass. These last two denials constitute the basis of the demurrer filed.

" Respondents justify their entry upon complainants' lands and the building of said railroad under a grant from Joshua Booher in his deed of Nov. 12, 1883, crossing the 103-acre lot.

" Twelfth. The grant of right of way contained in said deed is in the following words, viz:

" [Extract from deed of J. M. Booher and wife to Dr. Lewis Royer, Percival P. Dewees and Dr. Winfield T. Browning. Dated Nov. 12, 1883.]

" ' And the right and privilege to go upon said parcel of land, and to search for, dig and carry away said minerals is hereby granted and conveyed by the parties of the first part to the parties of the second part and their heirs and assigns for-

ever.* (The 17 acre tract). Also the parties of the first part hereby grant and convey to the parties of the second part, their heirs and assigns forever, the privilege and right of way over the land last described,* (17 acre tract) and over other lands owned by parties of the first part, from the lands hereinbefore described, to the public road in front of the residence or dwelling house of said Joshua M. Booher.

" ' Also the parties of the first part hereby grant and convey to the parties of the second part, their heirs and assigns forever, the privilege of placing and depositing upon any lands owned by them, all such minerals, ores, dirt and materials used for mining purposes, as the parties of the second part, their heirs and assigns may desire.'

" Thirteenth. The cost of building this railroad was about $11,000. The issuing of an injunction to restrain the use of same and causing the removal of the same from complainants' lands, would produce very great hardship, and in a great measure destroy the value of respondents' mines.

" Fourteenth. While the private road referred to intersects the public road near complainants' house, the railroad of respondents connects with the public road in front of complainants' house. That is, with the road passing in front of complainants' house, but the point of connection is considerably farther eastward.

" Fifteenth. The foregoing contains a substantial finding of the facts of the case.

### " CONCLUSIONS OF LAW.

" First. The question lying at the threshold of this case is a legal and not an equitable one.

" Respondents allege and show a grant to a right of way over complainants' land to transport their ore. Does this grant justify respondents in their uses of complainants' land in the manner found? This is a legal question, and where it is affirmed on the one side and denied on the other, there is no jurisdiction in equity.

" The question thus raised is one of title rather than trespass,

---

* The interlineation above of the following words " the 17 acre tract " is made by the court, so as to make intelligible the above extract when separated from the deed.

and therefore where a cause hinges upon a disputed title to do the act complained of, and which act is claimed to be author. ized, the title must be first settled in an action at law: Duncan v. Hollidaysburg and Gap Iron Works, 26 W. N. C. 479.

" Second. Trespass or ejectment is the appropriate action to settle the questions of law involved in complainants' case. And therefore where such action has been instituted to test the title, equity will not subsequently entertain jurisdiction until the legal question has been determined. If determined favorably to complainants, equity may then interpose to prevent future acts of trespass by writ of injunction.

" But should the question at law be determined adversely to complainants, then, of course, the remedy is gone both at law and in equity. In all actions, therefore, where jurisdiction is dependent upon a particular question which is a legal and not an equitable one, resort must first be had to the appropriate court to establish the right.

" A bill filed in equity to establish such right is termed an ejectment bill and cannot be maintained.' Duncan v. Gap Iron Co., supra, and cases there cited.

"Third. Under the facts and the law, complainants cannot recover in this form of proceeding and the bill should be dismissed."

The court entered a decree dismissing the bill with costs to be paid complainants. Plaintiffs appealed.

*Error assigned* was in dismissing bill.

*W. McK. Williamson,* for appellants.—Equity has jurisdiction to restrain a continuing trespass: Foltz's App., 56 Pa. 413; Com. v. Pittsburg & Connellsville R. R., 24 Pa. 159; Bitting's App., 105 Pa. 517; Scheetz's App., 35 Pa. 88; Com. v. P. & C. R. R., 24 Pa. 159; Story's Equity, sec. 928; Hodgkins v. Farrington, 150 Mass. 19.

*J. D. Dorris, W. Dorris* and *J. R. Simpson* with him, for appellee.—Where rights which are legal are asserted on one side and denied on the other, the remedies are at law. They cannot be settled under equity forms: Washburn's App., 105 Pa. 480; Ferguson's App., 117 Pa. 426; Duncan v. Hollidaysburg and Gap Iron Works, 26 W. N. C. 479; Grubb's App.,

90 Pa. 233; Simmons v. Hendricks, 55 Am. Decisions, 441; Crune v. Ely, 37 N. Y. 564; Pomeroy's Eq. Jur. sec. 176; Power's App., 125 Pa. 186.

OPINION BY MR. JUSTICE FELL, May 30, 1895:

Under a grant to search for, dig and carry away minerals and a grant of a right of way the defendants constructed on the plaintiffs' land a narrow gauge railroad which is used only for carrying ores and extends from the mines to another road connected with a furnace.   The way is over rough land, unfit for cultivation and of but little value, and was granted in connection with the mining rights and the right to deposit on the land minerals, ores, dirt and other materials used for mining purposes to the extent to which the defendants or their assigns might desire.   The construction of the road does not interfere with any present or prospective use of the land, and the injury if any is to the bare legal right.   The plaintiffs made no objection to the construction of the road during the progress of the work, nor until more than a year after its completion. Three years after it was finished an action of trespass was brought, and subsequently this bill was filed to restrain the defendants from using the road and to require its removal.   The defendants deny that they have committed any trespass.   They aver that the title and possession of the land are in them; that the road was built under a claim of right recognized at the time by the acquiescence of the plaintiffs; that the market value of the land covered by the right of way is merely nominal; that the injury to the plaintiffs, if any, is trifling, and that an action at law is pending for the same alleged trespass.

The bill seeks to establish a legal right.   Whether the terms of the grant have been exceeded depends upon the construction of the deed from the plaintiffs' predecessors in title to the defendants.   This is a purely legal question, and one upon which the whole case rests.   Whether the trespass complained of has been committed depends upon the legal rights of the parties.   These rights should be determined at law.   When so determined an equity based upon them may if necessary be asserted, and adequate protection in their enjoyment be secured. It is said in the opinion in Grubb's Appeal, 90 Pa. 228, that a bill in equity " was never intended, nor has it ever been used,

to settle disputed rights in trespass.   When the right is clear it will restrain the commission of repeated acts of trespass on the sole ground of preventing a multiplicity of suits."

The case was decided in the common pleas upon this ground alone, and it is unnecessary now to consider whether the way selected by the defendants and the manner in which it is used are authorized by the grant.

The decree is affirmed.