# Pennsylvania Company *v.* Ohio River Junction Railroad Company.

*Appeals—Equity—Findings of fact.*

In an equity suit the findings of fact by the court below will not be disturbed unless manifestly erroneous.

*Railroads—Location—Prior location—Equity.*

Where a railroad company, engaged in heavy transportation business, locates a branch line on land for a part of which it has a deed, and for the remainder title by condemnation proceedings, and is in actual or constructive possession of the land for railroad purposes, it may maintain a bill in equity against a railroad company subsequently chartered, which seeks by force to.oust the first company from the land; and this is the case, although the second company sets up a title under a deed from the same person under whom the first company claimed. In such a case the question of title is a mere incident of the jurisdiction of equity to prevent forceable interference with the operation of a large carrying corporation with the resultant irreparable damage.

Argued Oct. 22, 1902. Appeal, No. 45, Oct. T., 1902, by defendant, from decree of C. P. Beaver Co., June T., 1901, No. 5, on bill in equity in case of Pennsylvania Company, Lessee of the Pittsburg, Youngstown & Ashtabula Railroad Company and the Pittsburg, Fort Wayne & Chicago Railway Company v. The Ohio River Junction Railroad Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity for an injunction.

Wilson, P. J., filed the following opinion:

The plaintiff complains that the Pittsburg, Youngstown & Ashtabula Company had caused to be surveyed, staked out and located a branch railroad from its road in the borough of New Brighton to a point near Remington in Economy township, Beaver county, Pennsylvania, which said line had been duly adopted by the proper officers of said company; that since the location and adoption of said line it has become the owner of a certain tract of land over which said line extends, giving the boundaries, and that the defendant company on March 21, 1901,

entered upon and began to lay tracks over the said land purchased without having filed any bond, or attempted to agree with the owners for the payment of damages sustained, and so forth; and alleges that if the defendant is permitted to take and occupy said lands as hereinbefore set forth, the plaintiffs will be irreparably damaged and will have no adequate remedy at law, and asks that the preliminary injunction be made perpetual to restrain the defendant from interfering with said lands in any manner whatever.

To these allegations the defendant answers, admitting the fact of entry, but averring that the defendant was the owner in fee simple of all the land upon which it so entered and began to lay its track, and the appropriation of the land by the defendant company for railroad purposes, and further alleging that it was under no obligation whatsoever to file any bond or to attempt to agree with any person for the payment of damages.

### FINDINGS OF FACT.

1. The plaintiff company is a corporation chartered and organized under a special act of assembly approved April 7, 1870, P. L. 1025, entitled, "An act incorporating the Pennsylvania company," and is the lessee of and operates the Pittsburg, Youngstown & Ashtabula Railroad and the Pittsburg, Fort Wayne & Chicago Railway.

2. The Pittsburg, Youngstown & Ashtabula Railroad is a railroad formed by a consolidation and merger of the Ashtabula, Niles & Youngstown Railroad and the Lawrence & Pittsburg Railroad, the Lawrence and Pittsburg Railroad Company having been formed by the consolidation and merger of the New Brighton & New Castle Railroad Company and the Lawrence Railroad Company, the articles of consolidation in both cases being duly filed at Harrisburg. The said New Brighton & New Castle Railroad Company was chartered on March 24, 1881, under the act of April 14, 1868, and the supplements thereto, and authorized to construct, operate and maintain a railroad between New Brighton, in Beaver County, Pennsylvaina, and New Castle in Lawrence County, Pennsylvania.

3. The Pittsburg, Youngstown & Ashtabula Railroad Company with its franchises, etc., was leased by articles of agreement dated December 12, 1887, to the Pennsylvania Company,

and has been operated since that time by the Pennsylvania Company.

4. The defendant company is a corporation of the state of Pennsylvania, organized and existing under the provisions of the act of April 4, 1868, and the several supplements thereto.

5. On August 8, 1898, a survey was made under the direction of the chief engineer of the Pennsylvania Company, who was also chief engineer of the Pittsburg, Youngstown & Ashtabula Railroad Company, and a location staked for an extension or branch line on the line of the said Pittsburg, Youngstown & Ashtabula Railroad on the easterly shore of the Beaver river, and running thence in a general southerly direction following the course of the Beaver river through the towns of New Brighton, Bolesville, Rochester and Freedom to a point in the main track of the Pittsburg, Fort Wayne & Chicago Railway just east of Remington station.

6. On the same day this extension was authorized by the board of directors of said Pittsburg, Youngstown & Ashtabula Railway Company, and a map and plan of the said location having been submitted to the board of directors of the said Pittsburg, Youngstown & Ashtabula Railroad Company, the said plan was duly approved and adopted by said board of directors, and at the same meeting the said board directed the proper officers of the company to take such measures for acquiring rights of way over land embraced in said route as might be proper and necessary.

7. Article first of the lease aforesaid " demised to said Pennsylvania Company all the railroad of said lease, branch road, sidings, etc., now owned or that may be hereafter acquired by the said party of the first part, at and between the said above mentioned termini of said railroad, or as pertaining thereto, and all extensions of the same now or hereafter to be constructed; also the corporate rights and franchises of the party of the first part that may be requisite and necessary for the use, operation and management of the said railroad and property."

8. The located and surveyed extension of the Pittsburg, Youngstown & Ashtabula Railroad ran through lands in Rochester township owned at that time by John E. Herrold, Anna Magee, Matilda Tischler, Ida M. Potts, James P. Leaf, Helen Leaf Miller, Joseph Anderson, Sarah J. McDonald and others.

9. The defendant company was chartered on January 18, 1898, for the construction of a railroad from a point in the borough of Rochester in said county of Beaver to a point in the township of New Sewickley in said county; and afterwards on September 16, 1900, the defendant company was authorized by letters patent to extend its line from its northern terminus in the borough of Rochester to the village of Wampum, in the county of Lawrence, and from its eastern terminus in the township of New Sewickley to the town of Butler, in the county of Butler, with a branch from its main line in the township of Economy to the borough of Sewickley in the county of Allegheny.

10. On October 29, 1900, the defendant company adopted a branch line for its railway, known as the Block House Run Branch thereof, which said line extends through the township of Rochester in said county, the said branch line prior to the adoption thereof was duly surveyed and staked out upon the ground by the engineers of the defendant company by authority of its board of directors.

11. On December 18, 1900, the defendant company through its agent, George I. Park, procured from John E. Herrold a contract for the sale of a certain tract of land situate in the township of Rochester, aforesaid, for the price or sum of $3,500, $25.00 thereof being paid at the execution of the contract, and the balance, $3,475, to be paid within thirty days after the date of the contract, or when a good deed for the premises could be delivered, which said contract was taken in the name of the said George I. Park in trust for the defendant company.

12. On December 19, 1900, the engineer of the defendant company recommended to the board of directors thereof the acquisition of the lands described in the plaintiff's bill, for the purpose of establishing thereon a yard for the defendant company; and thereupon the engineer of the defendant company, in accordance with the instructions given him by the said board of directors, surveyed and staked out a location for a yard for the defendant company, and returned the same to the board of directors of the defendant company on February 6, 1901, and the same was then and there adopted as the location of its yards by the said board of directors.

13. On February 23, 1901, J. D. Strock, acting for the Pitts-

burg, Youngstown & Ashtabula Railroad Company, bought the land owned by John E. Herrold, over which the branch line of said defendant company was located by an article of agreement; and in pursuance of this contract a deed was made by said John E. Herrold and wife to William Jackson for said land, the said deed being dated March 8, 1901, and entered for record the same day, the said William Jackson holding this land merely as trustee for the Pittsburg, Youngstown & Ashtabula Railroad Company, which paid the consideration money thereof.

14. In the same manner on March 15, 1901, the said Pittsburg, Youngstown & Ashtabula Railroad Company acquired the land of John J. Hoffman in said township ; on March 8, 1901, the land of James P. Leaf; on March 2, 1901, the land of Ida May Potts ; on March 10, 1901, the land of Matilda Tischler; on March 9, 1901, the land of Joseph Anderson; on March 2, 1901, the land of W. J. Davidson; on March 5, 1901, the land of Anna Magee, and on March 4, 1901, the land of Sarah Jackson McDonald.

15. On March 14, 1901, the defendant company tendered to John E. Herrold the balance of purchase money due under its contract to purchase for the land which had been deeded by the said John E. Herrold to the Pittsburg, Youngstown & Ashtabula Railroad Company, by deed of March 8, 1901, and the said defendant company on March 21, 1901, entered upon said land and began the construction of one of its yard tracks thereon.

16. On the same day the employees of the Pennsylvania Company tore up and removed said track and threw the materials of which the same was composed into the Big Beaver creek, and the defendant company thereupon secured other materials and replaced the said track, where the same yet remains.

17. The yard track in course of construction by the defendant company is more than 100 feet east of the location of the Pittsburg, Youngstown & Ashtabula Railroad.

18. By the purchase of the lands in findings twelve and thirteen, the Pittsburg, Youngstown & Ashtabula Railroad Company became the owners of all the lands in said township bounded as follows : "North by lands of the Beaver Valley

Traction Company, east by the public road leading from Rochester to New Brighton, south by lands of S. Barnes & Company, Limited, and west by the Big Beaver river," with the exception of one strip extending east and west which is owned by Mrs. A. W. Miller.

19. That the location of the extension of the Pittsburg, Youngstown & Ashtabula Railroad over this line was prior to any location thereon by the Ohio River Junction Railroad Company of its yards and shops.

20. On March 21, 1901, the Ohio River Junction Railroad Company entered upon the land as aforesaid acquired by the Pittsburg, Youngstown & Ashtabula Railroad Company from John E. Herrold, and began to dig up the same, and lay tracks thereon in accordance with an alleged plan for yards and shops which covered the whole of the land acquired from John E. Herrold, Joseph Anderson and others, and the located line of the Pittsburg, Youngstown & Ashtabula Railroad without having filed any bond or making any agreement with the owners of said land.

21. On March 28, 1901, the defendant company presented to the law side of this court bonds to the owners from whom the Pittsburg, Youngstown & Ashtabula Railroad Company purchased, upon which said yard and its branch line were located, except the tract of J. E. Herrold and Mrs. A. W. Miller, to secure the damages sustained by reason of said appropriations, which said bonds were objected to by the plaintiff company and have not yet been approved, pending this suit.

### CONCLUSIONS OF LAW.

1. Upon the merger of railroads a new corporation is formed, having all the rights, privileges and franchises theretofore vested in either of them : Act of May 16, 1861, P. L. 702.

2. The New Brighton & New Castle Railroad Company had the right to make such extensions and branches as it might deem necessary to increase its business and accommodate the travel of the public, and this company having been merged in the Pittsburg, Youngstown & Ashtabula Railroad Company, the latter would therefore be vested with the same right.

3. The location of the extension by the Pittsburg, Youngstown & Ashtabula Railroad Company on August 8, 1898, was

a valid location for a railroad over the land in question. See Pittsburg, etc., Railway Co. v. Pittsburg, etc., Railroad Co., 159 Pa. 331 (1893).

4. The Pittsburg, Youngstown & Ashtabula Railroad Company having a prior location and having acquired title to the land is entitled to exclusive possession thereof, and the said Ohio River Junction Railroad Company had no right to interfere with any of this land by laying tracks thereon, or in any other manner, until it had filed bonds and properly taken so much of said land as is not absolutely necessary to the operation of the branch line of the said Pittsburg, Youngstown & Ashtabula Railroad Company.

5. The Ohio River Junction Railroad Company should not be permitted to take any of the said lands until the same has been properly condemned.

6. The Ohio River Junction Railroad Company should not be permitted to take any part of said lands needed by the said Pittsburg, Youngstown & Ashtabula Railroad Company for the construction and operation of said line.

7. The preliminary injunction heretofore issued should be made perpetual.

8. The costs of this proceedings should be paid by the defendant company.

Now, October 1, 1901, the preliminary injunction heretofore granted is made perpetual, and counsel for plaintiff are directed to draw a decree in conformity with this opinion.

*Error assigned* was the decree of the court.

*Richard S. Holt,* with him *George Wilson* and *A. M. Neeper,* for appellant.—As the question of title was decided, the whole case was determined. The appellant is in possession of the land in dispute under an instrument of writing, dated December 18, 1900, and the appellee is out of possession, setting up alleged rights under an article of agreement dated February 23, 1901, and a deed dated March 8, 1901, and is attempting to take the land out of possession of appellant, through the aid of a court of equity. Such question can be determined only by a jury, and the appellant cannot be deprived of its land in any other way: Pennsylvania Canal Co. v. Middletown, etc., Turn-

pike Co., 11 Pa. C. C. Rep. 582; Norris's App., 64 Pa. 275; Washburn's App., 105 Pa. 480; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Tillmes v. Marsh, 67 Pa. 507; Haines's App., 73 Pa. 169; Rhea v. Forsyth, 37 Pa. 503; Leininger's App., 106 Pa. 398; Duncan v. Hollidaysburg, etc., Iron Works, 136 Pa. 478; North Shore R. R. Co. v. Penna. Co., 193 Pa. 641.

Independent of the disputed legal title by purchase, the appellant's right, as against the appellee, to construct its said track, is clear; for, on February 6, 1901, the appellant, by due corporate action, appropriated the said land upon which it so entered and constructed its said track for railroad purposes; whereas the earliest inception of appellee's alleged legal title was on February 23, 1901: Williamsport, etc., R. R. Co. v. Phila., etc., R. R. Co., 141 Pa. 407; Johnston v. Callery, 173 Pa. 129.

*John M. Buchanan*, with him *Arthur E. Barnett*, for appellee. —It is clear that the question of title as raised in this suit is not the vital one, and the general result of the suit would have been the same had the court refused to consider it, or had the bill and answer not raised the question.

The court, however, had jurisdiction to try the question of title as involved in this case: Wilhelm's App., 79 Pa. 120; New Brighton & New Castle R. R. Co. v. Pittsburg, Youngstown, etc., R. R. Co., 105 Pa. 13.

OPINION BY MR. JUSTICE DEAN, January 5, 1903:

The Pittsburg, Youngstown & Ashtabula Railroad was incorporated under the general railroad act of 1868; it runs from New Brighton, Beaver county, to Ashtabula Harbor on Lake Erie, a distance of 106 miles; it is located for the greater part on the east bank of the Beaver river. At New Brighton it connects with the Pittsburg, Fort Wayne & Chicago Railway; both roads are leased and operated by the Pennsylvania Company, this appellee. On August 8, 1898, the Pittsburg, Youngstown & Ashtabula road adopted a survey of a branch line along the east bank of the Beaver river for about nine miles from New Brighton to Conway yards, where its freight cars are classified for shipment. After the location of this branch, the Pittsburg, Youngstown & Ashtabula road acquired, by purchase, land necessary for the extension along the bank of the river.

One tract, the Helen Miller, it did not purchase, but so much
of it as was necessary for its right of way was appropriated in
condemnation proceedings and a proper bond filed, conditioned
for the payment of damages.

The Ohio River Junction Railroad Company, this appellant,
on September 28, 1900, took out its charter under the general
railroad act of 1868, and in October of the same year made a
location of its line on part of the same land theretofore claimed
to have been appropriated by appellee for its branch line from
New Brighton to Ashtabula; and further appellant, in connec-
tion with the land taken for its right of way, also sought to
occupy land adjoining for yards and railroad shops, and on
March 21, 1901, began the construction of yards and shops;
thereupon, appellee removed its tracks and filed this bill for an
injunction restraining it from entry upon any of the lands
theretofore appropriated by it. Appellee claimed to be in
possession by grant in fee of a greater part of the land and of
that which it did not own in fee by the lawful exercise of the
power of eminent domain. Appellant claims possession of two
of the tracts through which appellee's line is located, the one,
J. E. Herrold, by a conveyance in fee from the owner, the other,
Helen F. Miller, by survey, location and filing of bond under
the statute. The appellee claims the Herrold tract by convey-
ance in fee simple, the Miller by lawful appropriation. The
same parts of both of these tracts would be occupied by the
rival lines, as apparent from the testimony and maps before us.

The learned judge of the court below after full hearing found
the facts, applied his conclusions of law and decreed a perpetual
injunction against appellant. From that decree comes this
appeal with twenty-two assignments of error, seven to the find-
ings of fact and fifteen to the conclusions of law. Under our
well established rule, that the findings of fact by the court be-
low will not be disturbed unless manifestly erroneous, we could
not, even if doubtful of their correctness, set any one of them
aside. But a careful examination of the testimony raises no
doubt in our minds as to their being sustained by the weight
of the evidence. So these seven assignments of error to find-
ings of fact are overruled.

Coming then, to the alleged errors in the court's conclu-
sions of law, we are of opinion, that the fourth conclusion

necessarily follows from the nineteenth and twentieth findings of facts, following:

"19. The location of the extension of the Pittsburg, Youngstown & Ashtabula Railroad over this line was prior to any location thereon by the Ohio River Junction Railroad Company of its yards and shops.

"20. On March 21, 1901, the Ohio River Junction Railroad Company entered upon the land as aforesaid acquired by the Pittsburg, Youngstown & Ashtabula Railroad Company from John E. Herrold, and began to dig up the same, and lay tracks thereon in accordance with an alleged plan for yards and shops which covered the whole of the land acquired from John E. Herrold, Joseph Anderson and others and the located line of the Pittsburg, Youngstown & Ashtabula Railroad, without having filed any bond or making an agreement with the owners of said land."

Then follows the fourth conclusion of law which amply vindicate the decree, unless, as we shall presently notice, a court of equity had no jurisdiction to make it. The conclusion is this :

"4. The Pittsburg, Youngstown & Ashtabula Railroad Company having a prior location and having acquired title to the land is entitled to the exclusive possession thereof, and the said Ohio River Junction Railroad Company had no right to interfere with any of this land by laying tracks thereon, or in any other manner, until it had filed bonds and properly taken so much of said land as is not absolutely necessary to the operation of the branch line of the said Pittsburg, Youngstown & Ashtabula Railroad Company."

It is argued by appellant's counsel, that without regard to the findings of fact, the bill should have been dismissed for want of jurisdiction on the ground that it is an ejectment bill involving the title to land which can only be tried on the law side of the court. If the point made be applicable to the facts, it would undoubtedly rule the case in favor of appellant. "Trial by jury shall remain as heretofore and the right thereof remain inviolate," and we have often decided that equity cannot try a question of title to real estate according to the course of proceeding in chancery. It is said in North Penna. Coal Co. v. Snowden, 42 Pa. 488, "The legislature cannot confer upon the

Supreme Court and the courts of common pleas the power of trying according to the course of chancery any question which has always been triable according to the course of law by a jury." To the same effect are Norris's Appeal, 64 Pa. 275, Grubb's Appeal, 90 Pa. 228, Washburn's Appeal, 105 Pa. 480, and Duncan v. Hollidaysburg etc., Iron Works, 136 Pa. 478, and many other cases. But it is just as firmly established, that where equity has jurisdiction of the subject-matter, it will decide every incidental question that is necessarily involved. As a fact, the court found that appellee had made its location in 1898, and had gone into possession, or was at least constructively in possession then, for railroad purposes; that appellant's location was not adopted until October, 1900, and that it impliedly sought by force to oust appellee from the land of which it had been in possession for railroad purposes for two years. We think it cannot be doubted, that equity would have jurisdiction to prevent forceable interference with the operation of a large carrying corporation; an interference which from its very nature would be continuous; and the jurisdiction would be sustained on the single ground, that the damage would be irreparable and there was no adequate remedy at law.

In view of the finding as to prior location and constructive possession, how could the bill in equity, in any legal aspect of the question be, what is commonly known as an ejectment bill? Ejectment is a possessory action. Appellee under a prior location was in possession; appellant wanted possession; appellee could not either by bill in equity or in a common-law court bring ejectment against itself. As a justification of its prior possession, appellee chose to aver its right under what it alleged was a valid title; appellant in its answer denied the right and set up its own alleged legal title to the land, but the question of title was a mere incident of the subject of equitable jurisdiction. It was wholly unnecessary for appellee, to sustain its prayer for equitable relief, to aver title by a common-law conveyance of the land which was a part of its roadbed. In determining whether an injunction should be awarded, incidentally, a question of title arose, and for equitable purposes it was perhaps proper for the court to pass on the title. As to how far such decision would be conclusive of the title it is not necessary to decide in this case; that can be settled in an action

at law, but it would be conclusive so far as it tended to move or to stay the hand of the chancellor. An injunction is of grace and not of right; it is the conscience of the chancellor which is to be aroused or quieted and he, to enlighten his conscience, as to whether he should put forth his hand or withhold it, will look into those facts which aggravate or mitigate the alleged wrongdoing. The court below, having found that the acts of the defendant, necessarily interrupted appellee's large transportation for the public; that it had a prior location and was in peaceable possession, might have stopped just there, and awarded the injunction to await the event of an action at law by appellant on its alleged legal title. It chose, however, to go further and find that Herrold, whose land is claimed by both appellant and appellee, had conveyed it by deed to appellee duly recorded March 8, 1901; that he had conveyed the same land to appellant by deed duly recorded six days later and that appellee was in possession under its prior deed. Further, that as to the Miller tract, appellant was in possession under a lawful appropriation of a right of way within its power of eminent domain. Even, if the learned judge of the court below was of opinion, that an incidental inquiry into the title was proper to inform his conscience, his authority to make such inquiry is undoubted. Justice SHARSWOOD in Wilhelm's Appeal, 79 Pa. 120, 141, speaks thus :

" Nor is there any doubt, that though a question of title may be necessarily involved, it is within the jurisdiction (of equity), for where there is jurisdiction of the subject-matter, that carries with it jurisdiction to decide every incidental question that is necessarily involved."

But as before intimated, we decline to pass on the question of title to the Herrold tract on this appeal, because it is not necessary to a decision of the question before us. Leaving that entirely out of view, the decree is sustained on the other findings of fact to which we have adverted. Of course, if the question to be decided depended on, in whom is the legal title to the Herrold and Miller tracts, then the power to award an injunction would depend on that decision ; but the right to equitable interference turns on answers to these questions : Is appellee a heavy transportation company ? Had it a prior location on the land and was it in possession thereof conducting

a large business both in its own interests and for the advantage and convenience of the general public ? Would the attempt of appellant to assert by force its assumed but disputed legal right, result in a possible disturbance of the peace and sudden disruption of business of a common carrier as well as cause great inconvenience and loss to the public ? On the answers to these questions depended the jurisdiction of equity ; the chancellor answered them all in the affirmative and put forth his strong hand to restrain appellant; he was warranted in so doing without regard to the incidental question, in whom was the legal title to the land?

The decree is affirmed.