FLYNN, APPELLANT, *v.* BEAVERHEAD COUNTY, RESPONDENT.

(No. 3,393.)

(Submitted May 29, 1914.  Decided June 17, 1914.)

[141 Pac. 673.]

*Ejectment—Eminent Domain—Compensation—Counties—Highways—How Discontinued.*

Eminent Domain—Payment—Condition Precedent.

1. Under section 14, Article III, of the Constitution, payment or tender of the amount ascertained to be due in the manner provided by law for private property intended to be taken for a public use, is a condition precedent to the acquisition of any right therein by the public.

[As to damages or injuries for which compensation must be made, see notes in 31 Am. Dec. 373; 88 Am. Dec. 113; 4 Am. St. Rep. 399; 9 Am. St. Rep. 144; 19 Am. St. Rep. 459; 22 Am. St. Rep. 50; 35 Am. St. Rep. 291.]

Same—Ejectment—Municipal Corporations.

2. Ejectment lies in favor of the owner of land taken under eminent domain without payment or tender of just compensation ascertained as prescribed by law, and the fact that the wrongdoer is a municipal corporation is immaterial, it being answerable the same as a private citizen under the same circumstances.

Same—Highways—How Discontinued.

3. Where a public road had been established at public expense in strict conformity with statutory provisions and with plaintiff's consent relinquishing compensation so far as said road ran through his land, it had, under section 1338, Revised Codes, to remain such until abandoned as therein provided, and the failure of the county commissioners to comply with conditions attached to plaintiff's consent, did not clothe him with the right to maintain ejectment against the county.

*Appeal from District Court, Beaverhead County; Wm. A. Clark, Judge.*

ACTION by Thomas Flynn against Beaverhead County. From a judgment of nonsuit plaintiff appeals. Affirmed.

*Messrs. Norris, Hurd & Smith,* for Appellant, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

Under the facts in this case, ejectment is the proper remedy. The case of *Armstrong* v. *City of St. Louis,* 69 Mo. 309, 33 Am. Rep. 499, is the leading case on this subject. It holds that ejectment will lie against a city to recover land which the city had wrongfully taken and converted into a street. In the case of *McCarty* v. *Clark County,* 101 Mo. 179, 14 S. W. 51, the supreme court of Missouri approves the *Armstrong Case* and says: "Ejectment will lie against a county the same as against a city to recover land which has been wrongfully taken and converted into a public road; the remedy being allowed in the one case, there is no good reason why it should be denied in the other." In the case of *Lawe* v. *City of Kaukauna,* 70 Wis. 306, 35 N. W. 561, the supreme court of Wisconsin says: "The defendant was in possession of parts of lots 7, 8 and 9 for the use of a swing-bridge across the canal and clearly intended to occupy and use the same in hostility to the plaintiff's title. Trespass would be an inadequate and vexatious remedy in such a case. The defendant claims the permanent and continued right to the possession of the lots for such purpose. Ejectment is the only adequate remedy in such case." (See, also, *Tuller* v. *City of Detroit,* 97 Mich. 597, 56 N. W. 1033; *Ewing* v. *City of St. Louis,* 5 Wall. 413, 18 L. Ed. 657.) The supreme court of California, in the case of *Barry* v. *Sonoma County,* 43 Cal. 217, considered an action of ejectment against the county for the recovery of land. The case was decided upon another point but the appeal would not have been entertained had not the court been of the opinion that the action in ejectment against the county would lie and was the appropriate remedy.

*Mr. D. M. Kelly,* Attorney General, *Mr. Wm. H. Poorman,* Assistant Attorney General, *Mr. Roy S. Stephenson,* and *Mr. H.*

*G. Rodgers,* for Respondent, submitted a brief; *Mr. Poorman* and *Mr. Rodgers* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action in ejectment. The complaint is in the usual form, alleging title and right of possession in plaintiff to certain lands described, and ouster therefrom by the defendant, to plaintiff's damage, *etc.* The answer consists of a denial of all the material allegations of the complaint, and matters alleged as affirmative defenses upon which issue was joined by reply. At the close of plaintiff's evidence the court granted the defendant a nonsuit and directed judgment in its favor for the costs of the action. The plaintiff has appealed.

The evidence discloses these facts: Some time prior to September 15, 1908, a number (more than ten) of the residents of defendant county and owners of land therein presented to the board of commissioners of the county a petition asking for the establishment of a new road from the vicinity in which their lands are situated to Dillon, the county seat. The proposed road, as described in the petition, was to extend through the lands of the plaintiff, and thence through adjoining lands owned by Mrs. R. A. Reynolds and others, so as to give the plaintiff an outlet toward Dillon more direct than was furnished by the old road or a new road established on any other line. It was recited that all the owners of lands through which the proposed road would pass consented to its establishment without cost to the county for right of way, except Mrs. Reynolds. It was asked that, upon the establishment of the proposed road, the old road should be abandoned. Mrs. Reynolds also signed the petition but attached, to the consent thus given, certain conditions as to fences, ditches, gates, *etc.,* along the right of way with which the county authorities should comply as compensation for the portion of her lands taken. Upon the presentation of the petition the board appointed viewers, who made their report. The report was approved. An order was thereupon made establishing the road as proposed, upon the condition that the

county was not to pay compensation to any of the petitioners for any portion of the right of way; the only expense being that of opening the road and putting it in condition for travel. The old road, which passed through other parts of the lands then owned by the plaintiff and others subsequently purchased by him, was ordered abandoned; plaintiff fencing the portions located on his lands. The record of the proceedings had by the board of commissioners at the time the petition was presented to and considered by it showed that the plaintiff had joined in the petition without any condition or reservation. He was permitted to testify that, when he signed the petition, he did so upon certain conditions expressed in a written communication to the board· which was before it at the time the viewers were appointed and the order establishing the road was made; but that, upon a search of the files in the clerk's office for the original petition and communication, he had ascertained that both had been lost or destroyed. He was then permitted, over objection of counsel for defendant, to testify further as to what these conditions were, *viz.:* That the proposed road should extend from the line of his lands straight through Mrs. Reynolds' lands, and thence on a direct route to Dillon, and that the right of way through his lands should be inclosed by a fence constructed as described in the petition. He then stated: ''The conditions imposed upon the board  *  *  *  with reference to this road, were never complied with. The conditions at the bottom set out that any failure to put a straight road through would make the agreement null and void. From time to time I tried to induce the board to comply with my conditions. Q. Did you ever intend to give the board, or give Beaverhead county, a right of way, unless such board accepted the conditions and fulfilled them?  *  *  *  A. No, sir. They accepted them, too, on the day they met. I was there when they met. They said they accepted my conditions. The board was in session at the time they accepted my conditions. They were meeting in the board room. *  *  *  After the road reached the line of the Reynolds ranch, the board stopped work on it; they would not do anything further. I asked them why they would not put it through. They.

said they could not because the conditions would not permit them to do it. That is the time that I served that notice that is now in evidence in this case."

It appears from other evidence that the work was stopped because the board was of the opinion that the expense of construction was too great. What change, if any, was made does not appear, but there is ground for the inference that the plaintiff can conveniently reach Dillon by traveling another road deviating somewhat from the line of the proposed road after it leaves his lands. About September 28, 1909, the plaintiff notified the board in writing that, unless the new road should be established and the old road closed up within sixty days, he would withdraw his "dedication and offer" to grant the right of way across his lands and "proceed to re-enter said proposed right of way and remove therefrom the fences that had been placed thereon, and to fully recover the use, possession, and enjoyment of said right of way and all thereof." After that date some construction work was done, but the extent of it does not appear. On September 7, 1911, the plaintiff presented to the board a claim against the county for the value of the land occupied by the road. On the following day he commenced an action against the county to recover the amount of this claim. This action was subsequently dismissed, and on November 22, 1912, the present action was commenced.

The question whether the court erred in admitting oral evidence as to the conditions upon which the plaintiff joined in the petition, thus supplementing the record of the proceedings had by the board, discussed by counsel in their brief, we do not think it necessary to decide. Conceding that the ruling was correct, and that the evidence establishes beyond question all that plaintiff's counsel claim, *viz.*, that the county acquired the right of way upon the express condition that the road should be constructed upon the line described in the petition and fenced as stated by plaintiff, the order of nonsuit was nevertheless properly granted. Section 14 of Article III of the Constitution declares: "Private property shall not be taken or damaged for public use without just compensation having first been made to

or paid into court for the owner." By force of this provision private property cannot be taken for a public use *in invitum,* except upon compensation first being made to the owner. In other [1, 2] words, the payment or tender of compensation, the amount of which has been ascertained in the manner provided by law, is made a condition precedent to the acquisition of any right by the public. (*Mayor, etc.,* v. *Fitzpatrick,* 36 N. J. L. 120; Elliott on Roads and Streets, 3d ed., sec. 272.) Possession taken from the owner without compliance with this condition is wrongful, and ejectment will lie in favor of the owner to recover it. The fact that the wrongdoer is a municipal corporation does not affect the right to maintain the action. In contemplation of law the municipality has been guilty of a wrong for which it is answerable as a private citizen would be, under the same circumstances. (*Armstrong* v. *City of St. Louis,* 69 Mo. 309, 33 Am. Rep. 499; *Mayor, etc.,* v. *Fitzpatrick, supra; McCarty* v. *Clark County,* 101 Mo. 179, 14 S. W. 51; *Lawe* v. *City of Kaukauna,* 70 Wis. 306, 35 N. W. 561; *Tuller* v. *City of Detroit,* 97 Mich. 597, 56 N. W. 1033; *Strong* v. *City of Brooklyn,* 68 N. Y. 1; Elliott on Roads and Streets, *supra.*) The doctrine of these cases was recognized by this court in *Murray* v. *City of Butte,* 7 Mont. 61, 14 Pac. 656. If, therefore, there were no other consideration to be taken into account, we should, upon the assumption we have made as to the ruling of the court referred to above, hold that the plaintiff can maintain this action.

The road was opened by the consent of plaintiff. The pro- [3] ceedings were admittedly in strict conformity with the provisions of the statute in force at the time the proceedings were had, which were the authority under which the board acted. (Rev. Codes, secs. 1390 *et seq.*) Now, let it be conceded that plaintiff, by giving his consent, did not forego his right to compensation in case the board failed to observe the conditions attached; nevertheless the road was opened at public expense. The right of the public to the use of it became vested. It thus became an established highway. Section 1338 of the Revised Codes declares: "All public highways once established must con-

tinue to be public highways until abandoned by the board of county commissioners of the county in which they are situated, or by operation of law, or judgment of a court of competent jurisdiction.'' None of these contingencies resulting in the closing of the road having occurred, it still remains a public highway, notwithstanding the commissioners did not observe the conditions upon which consent was given. This consideration alone, in our opinion, furnishes a conclusive reason why this action cannot be maintained. The county commissioners could have taken plaintiff's land without his consent; by paying full compensation, it is true (Rev. Codes, sec. 1398), but they could have taken it. Having taken and converted it into a highway, it must remain a highway, under the statute, *supra,* until it has ceased to be such by one of the means therein prescribed.

It is not meant by anything here said that the plaintiff is wholly without remedy. He may not thus be deprived of his land without full compensation for it. Upon the plainest principles of justice, the board of commissioners should ascertain the amount to which he is entitled and pay him. In the absence of favorable action on its part, he may maintain his action for it as he at first attempted to do. But in face of the provisions of the statute, *supra,* he cannot destroy the highway established according to law, through the medium of an action in ejectment.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.