POSTAL TELEGRAPH–CABLE CO. OF AMERICA, APPEL-
LANT, v. NOLAN ET AL., RESPONDENTS.

(No. 3,941.)

(Submitted November 24, 1916.   Decided December 23, 1916.)

[162 Pac. 169.]

*Injunction Pendente Lite—Telegraph Lines—Trespass—Emi-
nent Domain.*

Temporary Injunctions—Discretion.
    1.  An application for a temporary injunction order is addressed to the sound legal discretion of the trial court, and unless it is made to appear that such discretion was abused, the order will be approved on appeal.

Same—Purpose.
    2.  The purpose of an injunction *pendente lite* is to 'maintain the *status quo* until the relative rights of the parties can be determined by a trial on the merits.
    [As to injunctive relief as affected by comparative injury to parties, see note in Ann. Cas. 1913A, 248.]

Same—Burden of Proof.
    3.  To secure an injunction *pendente lite* the party applying for it has the burden of establishing a *prima facie* right to the relief.

Same—Telegraph Lines—When Refusal Error.
    4.  Where a telegraph company had been in the actual occupancy, as a right of way for its telegraph line, of a strip of ground over pub-lic lands before location thereof as a placer mining claim, and an interruption of its business would cause public interests to suffer, equitable interference by injunction was proper to restrain the own-ers from destroying the line pending determination of eminent domain proceedings instituted by the company to condemn the right of way.

Same—Telegraph Lines—Trespass—Implied Admission—When Refusal of Relief Error.

5. The apparently implied admission in plaintiff company's complaint seeking condemnation of a right of way of the ground covering which it had been in actual occupancy for about twelve years before, that it was a trespasser, *held* not to have been sufficient reason for refusal of a temporary injunction, where there was some evidence that its original entry was made under some color or claim of right.

Same—Telegraph Lines—Trespass—When Refusal of Relief not Error.

6. Refusal of an injunction to restrain owners of a mining claim from interfering with a telegraph company pending its suit to condemn a strip of ground over the claim for its pole line was not an abuse of discretion, where it appeared that the company had, after location of the ground as a placer claim by defendants, erected its line upon the ground without the knowledge or consent of the owners, and had made no offer of compensation therefor.

Eminent Domain—Public Utilities—Choice of Route.

7. The rule that a public utility—such as a telegraph company—has the right to determine for itself where the line of its utility shall be operated refers to its right to condemn, not to any right to trespass upon, private property for that purpose.

*Appeal from District Court, Silver Bow County; J. B. Mc-Clernan, Judge.*

ACTION by the Postal Telegraph-Cable Company, of Montana, a corporation, against Joseph P. Nolan and others. From an order denying application for injunction *pendente lite,* discharging an order to show cause, and dissolving a temporary restraining order, plaintiff appeals. Cause remanded, with directions to issue an injunction *pendente lite* which will preserve the *status quo* upon part of the ground involved in the litigation until final decision on the merits, and, with such modification, order affirmed.

*Mr. John G. Brown* and *Mr. William Meyer,* for Appellant, submitted a brief; *Mr. Meyer* argued the cause orally.

Admitting, for the sake of this argument, that appellant committed a wrong in going upon the Jessie Placer and erecting its line thereon without the consent of respondents, it is our contention that instead of taking the law into their own hands, as was done in his case, respondents could and should have commenced an action for damages against appellant.

At the outset we desire to urge upon the court this proposition: That in the construction of its line, appellant had the right to construct it at such points as it deemed best for its interest.   In the case of *Postal Telegraph-Cable Co.* v. *Oregon etc. R. Co.,* 23 Utah, 474, 90 Am. St: Rep. 705, 65 Pac. 735, it was held that a telegraph company has the right to determine when and where its line shall be built.   In *St. Louis etc. R. Co.* v. *Batesville & W. Tel. Co.,* 80 Ark. 499, 97 S. W. 660, 661, it was held, under circumstances similar to the circumstances in the case at bar, that the defendant was without authority to remove the line so constructed but was limited to an action for damages. ·(*Bannse* v. *Northern Pac. R. Co.,* 205 Fed. 328; *Union Pac. R. Co.* v. *Greeley,* 189 Fed. 1, 110 C. C. A. 571; *Donohue* v. *El Paso etc. R. Co.,* 214 U. S. 499, 53 L. Ed. 1060, 29 Sup. Ct. Rep. 698; *New England Tel. Co.* v. *Essex,* 206 Fed. 926.)   A case almost an all-fours with the case at bar, and particularly in the application of the principle for which we are contending, namely, that while eminent domain proceedings are pending, an injunction should issue to restrain the destruction of the appellant's line, and which case announces such doctrine as the law, is *Louisville & N. R. Co.* v. *Western Union Tel. Co.,* 207 Fed. 1, 124 C. C. A. 573.   "Where a company is in possession of property in actual use for public purposes, and its title is disputed, and a suit in ejectment has been begun to oust it from possession, a court of equity will entertain a bill to enjoin the ejectment suit and settle the rights of the parties."   (4 Cook on Corporations, 7th ed., 3885; *South & North Alabama R. Co.* v. *Alabama G. S. R. Co.,* 102 Ala. 236, 14 South. 747; *Paterson etc. R. Co.* v. *Kamlah,* 47 N. J. Eq. 331, 21 Atl. 954; *Foltz* v. *St. Louis etc. R. Co.,* 60 Fed. 316, 8 C. C. A. 635.)   "In some cases, the ejectment has been enjoined for a specified time to enable the complainant in the bill to condemn."   (*Id.; Winslow* v. *Baltimore etc. R. Co.,* 188 U. S. 646, 47 L. Ed. 635, 23 Sup. Ct. Rep. 443.)

*Mr. Peter Breen,* for Respondents, submitted a brief.

The leading case cited by appellant, to the effect that the respondents are relegated exclusively to an action for damages, is the case of *Gurnsey* v. *Northern California Power Co.,* 160 Cal. 699, 36 L. R. A. (n. s.) 185, 117 Pac. 906. We find in it, however, that the power company prevailed because of the plaintiff's "inaction"; that "plaintiff stood by without asserting a right which he might have invoked"; that he "acquiesced in the entrance" of the power company on his land. The case of *New England Tel. Co.* v. *Essex,* 206 Fed. 926, is based upon the proposition of estoppel, and for the purpose of this case we may admit the reasoning of that case, merely contenting ourselves with the statement that there is no estoppel here nor acquiescence by the respondents. And so, likewise, every case cited by appellant has in it the element of inaction, acquiescence, failure to speak and standing by on the part of the owner of the land.

"A corporation in charge of a public use may not condemn whatever it may find it convenient and advisable to acquire on the sole ground that it may save expense or add to the profits of the business." (*Northern Pac. R. Co.* v. *McAdow,* 44 Mont. 547, 121 Pac. 473.)

The order of the lower court should be affirmed, because the appellant failed to prove that the portion of the Pioneer occupied by it in 1905 and subsequently was public domain of the United States in 1905. The patent to the Pioneer does not contain any express exception in favor of a telegraph company. The exception is, that the premises hereby conveyed shall be held subject to any vested or accrued water rights for mining, agricultural, manufacturing or other purpose. *Prima facie* the Pioneer patent is a grant of all. The nature of the estate obtained by compliance with a location under the mining law has the effect of a grant by the United States of the right of personal and exclusive possession of the lands located, and the patent relates back to the date of location. (Lindley on Mines, 3d ed., sec. 539.) A mining estate is held to be property of

the highest character. (*Belk* v. *Meagher,* 104 U. S. 279, 284, 26 L. Ed. 735, 737.) This court has always treated a valid location as one that can be made only upon a portion of the public domain then open to location; that the location of a valid mining claim gives the locator the exclusive right to the possession of all of the surface. (*Street* v. *Delta Min. Co.,* 42 Mont. 371, 112 Pac. 701.) Property thus located becomes a portion of the public domain only by an actual abandonment of the claim by the locator. (*Belk* v. *Meagher, supra; Lavagnino* v. *Uhlig,* 198 U. S. 443, 49 L. Ed. 1119, 25 Sup. Ct. Rep. 716.) This is the effect of the decision in *Helena Gold & Iron Co.* v. *Baggaley,* 34 Mont. 464, 87 Pac. 455.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

For a considerable period of time the Postal Telegraph-Cable Company has maintained its telegraph lines from Butte through Silver Bow junction to points within and without this state, and has conducted a general telegraph and cable business, sending messages to and receiving messages from points throughout the world. For two years or more the defendants have owned the Pioneer and Jessie Placer claims, located between Butte and Silver Bow. Prior to the fall of 1914 the telegraph company's pole line and wires followed generally the road between those two points and crossed the Pioneer claim. About November, 1914, the company changed the route of a portion of its line and crossed the Jessie Placer without having obtained a right of way. Negotiations failed to settle the controversy which followed, and defendants destroyed a portion of the line across the Jessie claim and upon their threats to prevent the company from repairing the line, or using the line over either claim, this suit was instituted to secure an injunction. About the same time plaintiff instituted a proceeding in eminent domain to condemn the right of way occupied by it over each of those placer claims. A hearing was had in this suit upon plaintiff's application for an injunction *pendente lite,* but the applica-

tion was denied, the order to show cause was discharged and a temporary restraining order theretofore issued was dissolved. From the order plaintiff appealed.

The application for the temporary injunction was addressed **[1–3]** to the sound, legal discretion of the trial court, and unless it is made to appear that such discretion was abused, the order will be approved. The purpose of an injunction *pendente lite* is to maintain the *status quo* until the relative rights of the parties can be determined by a trial on the merits. (*Donlan* v. *Thompson Falls Copper & Mining Co.,* 42 Mont. 257, 112 Pac. 445.) To secure an injunction, the party applying for it has the burden of establishing a *prima facie* right to the relief. To apply these rules in the present instance, it is necessary to consider the relationship of the plaintiff to each of the placer claims separately.

1. *Pioneer Placer.* It appears reasonably certain from the evidence introduced upon the hearing below that the plaintiff's **[4]** pole line and wires have been in place and in constant use over the same course across the ground now occupied by the Pioneer Placer for at least sixteen years, and that the Pioneer Placer was not located until about 1904. When that claim was located, the ground must have been open, public land of the United States, and while it is not necessary or proper—in advance of a trial of this cause upon the merits—to determine whether plaintiff has a right of way over that claim by virtue of the congressional grant contained in section 5263, U. S. Rev. Stats. (7 Fed. Stats. Ann., p. 205; U. S. Comp. Stats. 1913, sec. 10,072), it is sufficient for the purposes of this appeal to know that plaintiff was in the actual occupancy of the right of way for its lines over this property, before the claim was located and at a time when the ground was public land to which the congressional grant would apply under appropriate circumstances. Added to this, the fact that plaintiff is a public service corporation and that the character of its business is such that public interest will suffer from an interruption, the case-made presents a proper subject for equitable interference by

injunction, until such time as the relative rights of the parties can be heard and determined upon the merits. (*Pennsylvania R. Co.* v. *Ohio River etc. R. R. Co.*, 204 Pa. 356, 54 Atl. 259; *Gurnsey* v. *Northern California Power Co.*, 160 Cal. 699, 36 L. R. A. (n. s.) 185, 117 Pac. 906.)

The trial court was doubtless influenced by the fact that [5] upon this hearing plaintiff introduced in evidence its complaint in the condemnation proceedings, and thereby disclosed that by seeking to condemn the same right of way over the Pioneer Placer which it now claims, it impliedly admits defendants' ownership and the absence of any right on its own part. However inconsistent these positions may appear on the face of the records, we think the allegations of the complaint in the condemnation proceedings cannot be held to amount to an admission that plaintiff is a trespasser upon this claim. It is possible to reconcile the allegations of the complaint with the contention now made, and apparently sustained by the evidence, that plaintiff's original entry upon the ground now covered by the Pioneer Placer was made under some color or claim of right.

2. *Jessie Placer.* The evidence discloses that plaintiff erected its telegraph line across the Jessie Placer in the fall of 1914 at [6] a time when the ground was held by defendants under patent from the United States; that the work was all done and the line installed and in operation before any of the defendants knew that an invasion of their property was contemplated; that no attempt was made to secure a right of way; that no permission was sought for the entry upon this claim and no offer of compensation made. The plaintiff appears to be a naked trespasser upon this ground, without even a semblance of a claim to the right of way occupied by it and without any defense whatever for its high-handed, unlawful act. If the maxim, ''He who comes into a court of equity must come with clean hands,'' ever possessed any virtue, this case presents circumstances which command its application.

In laying the foundation for its application for equitable relief, plaintiff disclosed that its property which it seeks to have protected is upon defendants' land without a semblance of right. It cannot be heard to urge the public character of its business as a justification for its trespass. "No one can take advantage of his own wrong." (Rev. Codes, sec. 6185.) While tacitly admitting its wrongful occupancy of this claim, plaintiff nevertheless insists that having commenced condemnation proceedings to condemn the right of way, a court of equity, out of consideration for the public character of its business, ought to maintain the *status quo* until the question of damages can be determined. It would seem to be sufficient answer to say that plaintiff should have reversed the order and secured the right of way by purchase or condemnation before it occupied it. Whether the question of damages will be the only one raised in the eminent domain proceedings cannot be determined from this record.

Section 14, Article III, of our state Constitution provides: "Private property shall not be taken or damaged for public us? without just compensation having been *first* made to or paid into court for the owner." In *Flynn* v. *Beaverhead County,* 49 Mont. 347, 141 Pac. 673, we considered this constitutional guaranty and said: "By force of this provision private property cannot be taken for a public use *in invitum,* except upon compensation first being made to the owner. In other words, the payment or tender of compensation, the amount of which has been ascertained in the manner provided by law, is made a condition precedent to the acquisition of any right by the public. * * * Possession taken from the owner without compliance with this condition is wrongful, and ejectment will lie in favor of the owner to recover."

Counsel for appellant direct our attention to decided cases which they insist support their view; but an examination of them discloses that in every instance there were equitable considerations aside from the public character of the applicant's business. In not one of the cases was the entry sought to be

protected, initiated in naked trespass. There was in every case some sort of claim or color of right.

The case of *Everett Water Co.* v. *Powers,* 37 Wash. 143, 79 Pac. 617, seems to lend itself in aid of plaintiff's position, but it is directly opposed to the rule adopted by this court in the *Flynn Case* above, and we prefer to follow our own decision.

Counsel insist that a public utility corporation has the right [7] to determine for itself where the line of its utility shall be operated, and cite *Postal Telegraph-Cable Co.* v. *Oregon S. L. R. Co.,* 23 Utah, 474, 90 Am. St. Rep. 705, 65 Pac. 735, in support of that view. Counsel need not have gone to Utah for their authority. In *State ex rel. Bloomington L. & L. S. Co.* v. *District Court,* 34 Mont. 535, 115 Am. St. Rep. 540, 88 Pac. 44, this court announced the same rule as the Utah court, but in each instance the court was speaking with reference to a condemnation proceeding, and not with reference to the abstract right which would sanction a trespass upon private property. Subject to the provisions of section 7335, Revised Codes, it is no answer in eminent domain proceedings to say that a route different from the one sought to be condemned would suffice for plaintiff's purposes, but it is a very forceful answer to a naked trespasser to say to him, "You have no right whatever upon my property."

The order of the district court should be modified to meet the views herein expressed. The cause is remanded to the district court, with directions to issue an injunction *pendente lite,* which will preserve the *status quo* upon the ground now covered by the Pioneer Placer claim until the final decision upon the merits. With this modification made, the order will stand affirmed. Each party will pay his costs incurred upon this appeal.

*Modified and affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.

Rehearing denied January 13, 1917.