# CHARLESTON.

## D. G. WILLIAMSON *et als.* v. WAYLAND OIL & GAS COMPANY *et als.*

Submitted February 27, 1917.    Decided March 6, 1917.

1.  EQUITY—*Jurisdiction—Title to Land.*
    There is no jurisdiction in a court of equity, to determine a question of title to land, dependent upon oral evidence of the execution of a deed alleged to have been lost and its contents and of adverse possession under it, sufficient to vest title. (p. 758).

2.  ADVERSE POSSESSION—*Deed—Issue.*
    A child in possession of land formerly constituting a part of the tract on which his father resides, under a valid deed therefor from his father, holds in his own right under the deed, and, as between them, no question of title by adverse possession arises. (p. 758).

3.  SAME—*Vendor and Purchaser—Record as Notice—Color of Title.*
    Though an unrecorded deed is void as to a subsequent purchaser for value and without notice, the grantee therein and others claiming under him may rely upon and use the same as color of title, against such purchaser, in proving title in themselves by adverse possession, to the land the deed purports to convey. (p. 758).

4.  INJUNCTION—*Waste—Possession Under Life Tenants.*
    An entry upon land by permission of a life tenant thereof confers no greater right than such tenant had, and it affords no basis for an application to a court of equity for interposition of its injunctive process, for protection of the entrant in the performance of acts thereon which, if done by the life tenant, would be regarded in law as waste. (p. 759).

5.  PARTITION—*Parol Partition—Title—Effect.*
    A parol partition of land does not effect a severance of the common title, unless it is followed by possession of the several parcels, in such manner and to such an extent as to effect ousters of the parties by one another, and for such time as is sufficient to vest title by adverse possession. (p. 760).

6.  INJUNCTION—*Trespass to Realty—Equity—"Trespasser."*
    One who, without perfect and superior title in himself, peaceably enters upon a portion of a tract of land, actually occupied by another under claim and color of title, but without the consent of the latter and against his will, is a mere trespasser, and equity will extend him no aid in his efforts to maintain his position on the land. (p. 761).

Appeal from Circuit Court, Lincoln County.

Bill for an injunction by D. G. Williamson and others against the Wayland Oil & Gas Company and others. Motion to dissolve injunction sustained, and plaintiffs appeal.

*Affirmed and cause remanded.*

*McClintic, Mathews & Campbell* and *Price, Smith, Spilman & Clay,* for appellants.

*Stiles & Goettman* and *Koontz & Hurlbutt,* for appellees.

POFFENBARGER, JUDGE:

A partial statement of the nature and purpose of the suit in which this appeal was taken, will be found in the opinion delivered in *Wayland Oil and Gas Co.* v. *Rummel, Judge,* 88 S. E. 741. After the decision there reported, the plaintiffs in that suit filed their bill in the Circuit Court of the county, in which the land in controversy lies and in which the cause of action arose, Lincoln. The purpose of the bill, as disclosed by its prayer, was to obtain a decree quieting the title of the plaintiffs, as to and against claims thereto set up by the Wayland Oil and Gas Co., J. H. Harvey and Nettie Harvey, and, in the meantime, to restrain them, their agents and all other persons acting in their behalf, from injuring, destroying, or committing depredations upon the derrick, machinery and other property, of the plaintiffs and from interfering with them or their employees; in the drilling and operations on the parcel of land described in the bill, for oil and gas, and from prosecuting criminal proceedings against them for alleged trespasses. On the 6th day of May, 1916, after due notice, the defendants appeared before the judge of the court, in vacation, and tendered their joint and separate demurrer and answer to the bill and thereupon moved a dissolution of the injunction. In resistance of the motion, the plaintiffs filed a large amount of documentary evidence in support of their title, in the form of deeds, leases, certificates, affidavits and depositions. In support of their motion, the defendants filed a number of affidavits. From a decree sustaining the motion and dissolving the injunction, the plaintiffs took this appeal.

All the parties claim under the same original title, and the defendants predicate their claim on an alleged severance of that title, by the execution of a deed, in the year 1852. There is no record evidence of such a deed and the original cannot be produced. For the plaintiffs, its execution and existence are denied. The conflicting claims run back to Ephraim Pauley, the common source. By a deed dated Aug. 5, 1859, he conveyed to George W. Summers and Thomas B. Swann, a tract of land containing 100 acres and "all of the coal, iron, fire-clay and all other minerals" in the unsold portion of a tract of 5900 acres, and it is admitted that the 35 acre tract in controversy in this suit, is a part of said residue. Such right or title as Summers and Swann obtained were subsequently acquired by James A. Holley, who conveyed them to W. C. Sproul, in connection with other lands, making a total boundary of over 12,000 acres. Sproul conveyed them to the Seaboard Fuel Company, and that company, to the Standard Fuel Company. The last named company executed to William Freudenberger, a lease on the lands for oil and gas purposes. That lease came into the hands of the plaintiffs by numerous assignments.

The defendants claim from Ephraim Pauley, through his daughter-in-law, Elizabeth Pauley, Warren McCormick, her grantee, Mark McCormick, grantee of Warren, and the heirs of Mark. Their answer avers Mark McCormick, on his death, left surviving him, Hester McCormick, his widow, and five children, John, George, Laurania, Matilda and Nettie. Nettie conveyed her interest to Warren McCormick who conveyed it to Joel McCormick. She afterwards bought the interest of John, George and Laurania. Matilda still retains her interest. By a deed dated April 2, 1906, the widow, together with her second husband, Thomas Curry, conveyed to Nettie J. Harvey, a tract of land described as containing 5 acres and as being her one-sixth interest in the Mark McCormick tract. The defendants named in the bill are Nettie Harvey, J. H. Harvey, her husband, James B. Pauley and the Wayland Oil and Gas Co. The answer filed by three of these defendants, the Wayland Oil and Gas Co., Nettie Harvey and J. H. Harvey, avers that the Wayland Oil and Gas

Co. leased the McCormick tract containing 35 acres for oil and gas purposes, from the heirs of Mark McCormick.

There is some evidence tending to prove the allegation of the bill, that the heirs of Mark McCormick made a parol partition of the 35 acre tract, and set aside to Hester Curry, as and for her dower, and to Matilda McCormick, as and for her share in the estate, a small tract containing about 5 acres, upon which the plaintiffs have located, and are drilling, their well. The answer seems not to deny this allegation, expressly or directly, but it impliedly does so, for it avers ownership of undivided interests in Joel McCormick, Matilda McCormick and Nettie Harvey, and denies any assignment of dower to Hester Curry. It avers that the widow, in the absence of any assignment of her dower, had set up a claim of title to a five acre portion of the land on which she resided, and, by her deed hereinbefore mentioned, had conveyed the same to Nettie Harvey. Notwithstanding the execution of this deed, the widow remained in possession of the property until about two years before the institution of this suit. She was not residing on it at the date of the entry thereon by the plaintiffs, but it is claimed she was in possession through and by her son-in-law and agent, F. M. Hill, husband of Laurania McCormick. Her said agent, if he was such, made no objection to the entry of the plaintiffs upon the land. After their entry thereon, she accepted from them, the sum of $25.00, in payment of damages occasioned thereby. She now asserts, in an affidavit filed by the defendants, that she was induced to accept said sum by false and fraudulent representations made to her by the defendant for the purpose. The entry was resisted and opposed by J. H. Harvey, the husband of Nettie Harvey, for her and on her behalf. At the time thereof, he appeared on the ground, forbade the entry and posted a notice to trespassers, signed by himself and Hester Curry. His protestations and the notice having been ignored, he caused the arrest of some of the employees of the plaintiffs, and their conviction in a justice's court.

That the plaintiffs would be entitled to the relief they seek, if they had clear title to the oil and gas in the land, is

not denied or questioned. It is judicially declared in *Porter* v. *Manufacturing Co.*, 65 W. Va. 636.

But denial of their title is predicated upon averment and evidence of title in Elizabeth Pauley and those claiming under her, under the alleged lost and unrecorded deed of Ephraim Pauley to her, antedating the deed to Swann and Summers under which the plaintiffs claim. If there was such a deed, the possession of the grantee therein was clearly not a mere permissive one under the title of her father. It severed the title and the grantee therein held under it in her own right. On the other hand, if she merely entered into possession of a portion of her father's land, under a parol gift, or in expectation of an inheritance from him, and never renounced, disavowed or repudiated his title, so as to effect an ouster, her possession was not adverse. Such is not the character of the possession claimed for her. The answer avers the execution of a deed, loss thereof and possession under it for a period of about sixty years, and the defendants filed affidavits tending to prove the averment. In the evidence adduced by the plaintiffs, this claim is denied, but the allegations of the bill, the denial, the averments of the answer and the evidence adduced on both sides, make an issue of fact on the question of title in the defendants, by adverse possession. Two vital and controlling questions of fact in the issue are execution of the deed and possession thereunder of the kind and character essential to acquisition of title by adverse possession. Unless the lack of recordation of the deed precludes the claim of title set up by the defendants, in this manner, the issues are such as ought to be tried by a jury, and a court of equity has no jurisdiction for the determination thereof. On such questions of title, the parties have a constitutional right of trial by jury. *Freer* v. *Davis*, 52 W. Va. 1.

Failure to record the deed rendered it void only as to subsequent purchasers for value without notice thereof and creditors. Between the grantor and grantee, it was perfectly good, without recordation. Though it was void as to Swann and Summers, for lack of recordation, as to the minerals under the tract, including the oil and gas, if the deed conveyed

the oil and gas, it obviously and manifestly constituted color of title as to them, under which the possession of the grantee could become adverse and ripen into good title. It is expressly so held in *Nowlin* v. *Reynolds,* 25 Gratt. 137. No doubt many other instances of this exact holding may be found in the numerous cases declaring a deed to be color of title, without recordation, in the absence of a statute requiring it. 2 Ency. L. & P. 509; 2 C. J. 181. As to a subsequent purchaser for value without notice, it is void, and would have availed the holders nothing, in an action of ejectment, brought within the period of limitation of actions for rights of entry. But the statute declaring it void deals not with the right of action, for possession or title. That is governed by another statute, by force of which one having no title, may obtain it by adverse possession. Nor does the registry statute deal with the subject of color of title. It does not except a subsequent purchaser for value without notice from the operation of that doctrine.

Possession under the deed, if there was any, was not limited to the surface only. As described by the witnesses, the deed conveyed the entire interest in the land, and was executed before the minerals were severed from the surface, by the deed to Swann and Summers. Possession under it. is to be referred to the color of title and deemed to have been coextensive with the title the deed purported to pass. Definition of the extent of the claim made under it, latterly and vertically, is about the only office color of title performs. *Robinson* v. *Low,* 50 W. Va. 75, 83; Hutchinson's Land Titles, sec. 293; *Eye* v. *Medlar,* 82 Pa. St. 99; *Washburn* v. *Cutter,* 18 Minn. 369. If there had been a previous severance of minerals from the surface, the adverse possession would not have extended to the minerals. *Wallace* v. *Elmgrove Coal Co.,* 58 W. Va. 449.

Assuming rightfulness of the possession of the widow, through the agency of her son-in-law, without deciding it, we perceive no significance or virtue in any permission she may have given the plaintiffs, to enter upon the five acre lot or any other portion of land lying within her dower right, or in any ratification of any such entry made by them with-

out her permission. There were no oil or gas wells on that portion of the land, and her life tenancy therein, if any, conferred upon her no right to drill such wells, or cause them to be drilled. *Stewart* v. *Tenant*, 52 W. Va. 559, 576. Their admission to the possession under her title could confer no greater right than she had, and her possession was not adverse to the title of the remaindermen. *Merrit* v. *Hughes*, 36 W. Va. 356, 362; *Merritt* v. *Smith*, 6 Leigh 393; *Ball* v. *Johnson*, 8 Gratt. 285; Hutchinson's Land Titles, sec. 352. It was not the purpose of the entry to obtain any right she claimed or could confer upon the plaintiffs, nor was the injunction obtained for the protection of any such right. Its purpose is to protect them in the exercise of a claim of right which she did not attempt to confer and which is not claimed under or through her in any way. They succeeded merely to her right. If the defendants have title to the oil and gas, they could have enjoined her from taking it out; and, if the plaintiffs have no greater right than she had, they could be enjoined from doing so. Injunction manifestly does not lie, to protect them in doing a thing a court would enjoin them from doing.

Although there seems to have been a parol partition of the 35 acre tract among the heirs of Mark McCormick, that alone did not sever their common title. To effect such severance, the parties to the agreement must take and hold their respective parcels or lots in severalty, in such manner and to such an extent as to effect ousters against one another, and for such time as will vest title by adverse possession. As to this proposition, there is some conflict in the authorities. In *Coles* v. *Wooding*, 2 P. & H. 189, the Court, without citing any authority for the assertion, declared that parceners might divide their land by the mere act of marking a division line between their lots. That case was cited in *Jennings* v. *Shacklett*, 30 Gratt. 776, and in *Bolling* v. *Teel*, 76 Va. 496; but, in the latter case, the court left the question undecided. An amendment to the Virginia Code, made in 1887, sec. 2413, expressly requires a deed for voluntary partition. In his earlier editions, Prof. Minor took the view expressed in *Coles* v. *Wooding*, 2 Min. Inst. (2 Ed.) p. 438, but, in his

fourth edition, he takes the opposite position. 10 Ency. Dig. Va. & W. Va. p. 772. Our decisions fall far short of the proposition stated in *Coles* v. *Wooding.* A parol partition must be followed by actual possession in severalty. *Patterson* v. *Martin,* 33 W. Va. 494; *Justice* v. *Lawson,* 46 W. Va. 163. By a slight preponderance of American authority, and a decided majority of the English decisions, a deed is deemed to have been rendered necessary by the statute of frauds. Freeman, Coten. & Par. sec. 397. No reason why adverse possession should not supply the lack of a deed, is perceived; but anything short of a deed or title by ouster and adverse possession would lead to great uncertainty and confusion and give encouragement to perjury. This view seems to have been accepted in *Hazen* v. *Barnett,* 50 Mo. 507. If entirely fair and followed by possession, a parol partition will be specifically enforced in equity. To maintain their injunction on the theory of lack of title in the defendants to the 5 acre lot, the plaintiffs would have to disprove their apparent title thereto. This they have not done.

Such possession as may have been peaceably acquired from Hester Curry was only incidental to the asserted right of mining. Oil and gas are accessible or obtainable only by means of openings of the surface, and there can be no possession thereof in place, otherwise than by such possession of the surface as is necessary for the openings through which to extract them. It was for such possession of the oil and gas, that the entry was made, and no other. No previous possession to the exclusion of the heirs of Mark McCormick had ever been held by any person, and, if their title is good, nobody is entitled to such possession. As has been stated, the heirs resisted it, and their possession extended to the oil and gas as well as the surface, if they had good title to the minerals. The entrance effected by the plaintiffs did not exclude them from the whole of the land, nor from any portion thereof except that actually occupied by the plaintiffs. The possession obtained by the latter was not such as entitles them to call upon the court for aid in maintaining it. It was not complete. As the heirs of McCormick were in actual possession and the plaintiffs merely entered upon their

possession, the entry amounted to nothing more than a trespass. If they had been forcibly expelled, after such an entry, they would have had no right of action, against the parties in possession. Their possession is such as is described in some of the authorities as being a mere scrambling possession which confers no right. *Curtis* v. *Meadows,* 86 S. E. 886; *State* v. *Flannagan,* 86 S. E. 890; 15 Am. & Eng. Ency. L. 706.

The claim of right to have an injunction as a means of gaining possession of land for mining purposes, under circumstances very similar to those obtaining here, was denied in *Atkinson* v. *Coal and Mining Co.,* 80 Kan. 161. The Court said: ''The plaintiffs want to try out the question of title to the coal without a jury, and then take possession of it under the protection of an injunction which will prevent the opposition of the defendants. This avoids the real merits of the controversy. It gives undue prominence to the question whether or not the plaintiff has an easement under which it may mine coal as a minor and comparatively unimportant inquiry. By such a proceeding, the defendants are deprived of a right given them by the constitution and the statute. This cannot be sustained.''

The conclusion here indicated renders inquiry as to whether the deed to Swan and Summers passes title to any oil and gas unnecessary. In the present status of the case, it cannot properly be decided.

For the reasons stated, the decree complained of will be affirmed and the cause remanded.

*Affirmed and cause remanded.*