# CHARLESTON.

C. J. BUMPUS *et al.* v. OHIO CITIES GAS Co. *et al.*

Submitted April 13, 1920     Decided April 20, 1920.

1. ADVERSE POSSESSION—*Owner's Oral Contract for Sale or Gift Prevents Adverse Possession Without Assertion of Hostility.*

   Where land is entered pursuant to an oral contract for the sale or gift thereof by the owner, title thereto can not subsequently be acquired by adverse possession, no matter how long continued, without the previous assertion of a hostile claim thereto and possession thereunder and notice thereof to the owner from whom possession was so acquired.   (p. 231).

2. INJUNCTION—*Bill to Enjoin Interference by Owner Without Lands Properly Dismissed; Preliminary Injunction Properly Dissolved.*

   A bill for an injunction to restrain such former owner from interference with oil and gas operation on such land by such occupant of the land, when it is claimed by him that he had never agreed to sell or give and convey such land except the surface of a part thereof which he is still willing to convey, is properly dismissed, and the preliminary injunction awarded thereon properly dissolved, when the contract alleged is so indefinite and uncertain that specific performance thereof can not be enforced.   (p. 231).

86 W. Va.

3,   Schools and School Districts—*Board of Education Has no Title to Land Under Oral Contract Which Owner Denies.*

Neither section 8, chapter 45, Code 1918, nor section 47, chapter 2 of the Acts of 1919, were intended to vest in a board of education title to land possession whereof was obtained as stated in the preceding points of the syllabus, and to which the former owner still claims right and title.   (p. 232).

Appeal from Circuit Court, Boone County.

Suit for injunction by C. J. Bumpus and others against the Ohio Cities Gas Company and others, with cross-bill answer. From a final decree dissolving an injunction previously awarded to plaintiffs and perpetuating the injunction awarded defendants on their cross-bill answer, plaintiffs appeal.

*Affirmed.*

*Holt, Duncan & Holt, John B. Hager, W. E. R. Byrne M. W. Ryan, T. P. Ryan, G. P. Stewart* and *Leftwich & Shaffer,* for appellants.

*Murphy & Wade* and *Koontz & Hurlbutt,* for appellees.

Miller, Judge :

The controversy here involved is between the Board of Education of Sherman District, Boone County, lessor, and C. J. Bumpus, its lessee, on the one hand, and the Ohio Cities Gas Company, a corporation, grantee of Jas. A. Holley and Samuel Stephenson, and other defendants, on the other hand, as to the rights of the respective parties to the oil and gas under a certain school house lot on Joe's Creek, in Boone County, alleged by the plaintiffs to contain one acre of ground, a part of the larger tract which was granted by Holly and Stephenson and others to defendant the Ohio Cities Gas Company.

The alleged rights of the board of education as lessor and of Bumpus, its lessee, according to the bill, are predicated on two rather inconsistent theories of title:   First, title in fee simple, alleged to have been acquired by open, adverse, notorious and exclusive possession thereof by a valuable school house built thereon and occupied therewith for fifteen years next prior to the institution of this suit, described by metes and bounds and known as "School House Lot No. 8":   Second, under a contract

with the defendants Holley and Stephenson, alleged in the bill substantially as follows: that about fifteen years ago said board of education told said Holley and Stephenson that they desired to purchase said lot on which to build a school house to be used for school purposes, and contracted therefor with them, who under said contract agreed to convey the same to said board of education by an apt and proper deed as soon as the same should be laid off and designated; that after it was so located and designated Holley and Stephenson delivered to said board possession of the said lot, on which it then caused a valuable school house to be erected, and at which time said board of education took possession of said lot, and has continued to have open, adverse, notorious and exclusive possession thereof continuously ever since that time until now, and the same is still being used for school purposes, and has been owned and claimed as the property of the said board of education; but that Holley and Stephenson had never executed and delivered to the board of education any deed for the property, though they often promised so to do.

The bill alleges the making and execution by the board of education to Bumpus of a lease for oil and gas purposes, on May 6, 1919, and another lease to him, for reasons alleged but not material, on June 7, 1919, who thereafter entered on said lot for the purpose of drilling and exploring the same for oil and gas according to said lease; interference by the defendant the Ohio Cities Gas Company with him by threats of violence etc., their obstruction of the road leading to said lot, and other interruptions by said defendants of the rights of plaintiffs under the terms of said lease; and the prayer of the bill is that defendants and each of them, their servants and employees, and all persons claiming by or under them, might be restrained, enjoined and inhibited from interfering with plaintiffs as alleged in the drilling and exploring of said school house lot according to the terms and provisions of said lease, and for general relief. There is no special prayer for specific execution of the alleged contract with Holley and Stephenson. An amended and supplemental bill was filed by plaintiffs, not relating to the merits of the case, but simply to the description of the lot, the subject of the controversy.

On June 17th, on presentation, of the bill with exhibits and affidavits, the circuit court awarded plaintiffs a temporary injunction against defendants substantially as prayed for.

Subsequently, at July rules 1919, defendants appeared and filed their joint and several demurrers to the bill, and later, at September rules 1919, they also filed their joint and separate answers thereto, in which they deny the acquisition by said board of education of right and title to said lot by adverse possession. They admit that about the time of the alleged contract for said lot with said Holley and Stephenson, one of the members of the said board of education approached said Stephenson, representing that the said board of education desired to erect thereon a temporary building for temporary school purposes for a period of one or two years, to accommodate the children of some transient residents in that vicinity engaged in the timber business, at which time said Stephenson signified his willingness to allow said building to be erected upon said lot, for such temporary purposes, and at which time said Stephenson further promised that he would give said board of education a deed for the surface of a half acre when located by proper metes and bounds, and that subsequently when presented with a deed by one Bruce White, secretary of said board of education, prepared by him, namely on December 16, 1903, he wrote said White as follows: "I have your favor of the 10th inst. at hand and noted. In reply will say that I will make deed to the Board of Education for a school house, which I promised them. I did not agree to give them an acre of ground surface, as one-half acre is as much as I will give them, and that will be sufficient. I will not make the deed until I have it located by proper metes and bounds." The deed so submitted is not in the record, and the only written evidence of the agreement is the letter just referred to. Thereafter nothing appears to have been done to complete or perfect the title to said lot, unless adverse possession has done so.

Admitting some and denying other allegations of the bill, not now material to notice, the answer sets forth other matters as a basis for affirmative relief against plaintiffs. And thereon on September 13, 1919, the circuit court awarded defendants an

injunction against plaintiffs, restraining and inhibiting them from further drilling upon the land in controversy.

By the final decree appealed from, the court dissolved the injunction theretofore awarded plaintiffs on their bill, and perpetuated the injunction awarded defendants on their cross-bill answer. This is the decree now complained of by appellants.

If, as the bill alleges, the board of education entered upon the lot in controversy pursuant to a contract with Holley and Stephenson and thereafter erected thereon a school house, and never acquired from said Holley and Stephenson any deed for said lot, by all authority their entry and possession was not adverse and hostile, but solely and exclusively under Holley and Stephenson; and such possession could never ripen into good title by adverse possession except after the requisite period from such time as said board may have given notice to the owners of the repudiation of their title and the setting up of an adverse and hostile claim. *James Sons Co.* v. *Hutchinson,* 79 W. Va. 389, 402 and cases cited; *Hudson* v. *Pulney,* 14 W. Va. 561; *Clark* v. *Beard,* 69 W. Va. 313; *Custer* v. *Hall,* 71 W. Va. 119.

The bill alleges no such incipient adverse possession. It alleges no notice to defendants of intention to hold adversely, and there is nothing in the fact that the board of education built a school house on the lot and occupied the same for a longer period that would be requisite by possession and hostile title to acquire good title against them and all the world, for the entry was under and servient to the title of defendants.

True, the bill alleges adverse possession, but it as truly alleges entry and possession under Holley and Stephenson, under contract for a deed. Certainly we can not interpret the bill as alleging adverse and hostile claim as against the defendants under whom the board of education entered and who put it in possession. The bill commits plaintiffs to the facts pleaded. It is contended in argument that defendants had notice of the hostile claim from the time Stephenson wrote his letter declining to execute the proposed deed for one acre, but such would not be the result of his declination to make a deed for more land than the contract called for, as he understood it. There is some slight evidence tending to show entry by the board of education under

a Mrs. Collins, from whom Holley and Stephenson purchased, but the evidence shows that Holley and Stephenson acquired title more than a year before the alleged contract for the school house lot, and long before entry was made and the school house built. But of what avail is that class of evidence, which is most unsatisfactory, in the face of the pleading alleging entry and possession under Holley and Stephenson?

It is quite true, as our decisions cited hold, that the owner of land is charged with notice of all that goes on upon it affecting his right and title, but if as the bill alleges there was a contract by the board of education with Holley and Stephenson and entry and possession taken under them, they would not be charged with notice of a hostile claim by those who entered and held under them, except from the time they might be given notice of holding under some other title. This proposition is well supported by the decisions already cited.

Other sources of title not alleged but relied on in argument are, the provisions of section 8, chapter 45, Code 1918, and section 47, chapter 2, Acts 1919; said section 8 providing that "the title of all such lands as have been in the actual possession of any board of education for the last five years, and are still in such possession and not otherwise claimed, is hereby vested in the board of education of the district in which such lands are situated, to be held and used for free school purposes;" and said section 47 containing a provision that "any land or school sites which for five years prior to the first day of July, one thousand nine hundred and nineteen, have been in the undisputed possession of any district board of education and which are still in such possession and to which title cannot be shown by any other claimant, shall be the property of the board of education," etc. How can title to the lot in question have become vested in the Board of Education of Sherman District under these statutes? It is conceded that Holley and Stephenson, are claiming the land except as to the half acre of surface, which they have always been willing to convey to the board of education when properly bounded; and it is conceded that they have title to the land unless lost by adverse possession, which we do not think under the allegations of the bill and the proof in the

case; and they are claimants of the land, and have been since they purchased it. The statutes in question were manifestly intended not to disturb the titles of bona fide claimants of lands. The provisions of these statutes are limited to lands not claimed or to which title is not held by others.

But should there have been specific execution of the alleged contract with Holley and Stephenson? The bill does not pray for such relief, and the contract as alleged is too indefinite and uncertain for specific execution. The bill alleges no consideration for the contract, no terms of payment, nor the performance of the contract on the part of the board of education. True, the answer admits an agreement to give a deed for a half acre of surface. But such a deed would avail plaintiffs nothing in the oil and gas in or under the land covered by the lease from the board of education to Bumpus. The decree appealed from, however, contains no error in this regard of which appellants can complain, for it reserves to plaintiffs the right to prosecute any suit to vindicate its rights under the contract, whatever they may be.

On the record as now presented, we see no error in the decree and are of opinion that it should be affirmed.

*Affirmed.*