THOMAS F. McCRAN, attorney-general, in behalf of the State of New Jersey, informant,

*v.*

WESTERN UNION TELEGRAPH COMPANY, defendant.

[Decided March 23d, 1923.]

1. *Mandamus*, and not mandatory injunction, is the proper remedy to compel the performance of a public duty enjoined upon a *quasi*-public corporation by statute.

2. On hearing upon bill (or information) and answer the facts well pleaded in the answer are to be taken as true.

3. Defendant in an answer in chancery may aver want of jurisdiction of the court, but proper pleading requires that he pray the same benefit of such averment as he would have been entitled to on demurrer.

4. On objection made, or of the court's own motion, relief will be denied if the court be without jurisdiction of the subject-matter of the suit.

5. Where complainant's claim is legal in its nature equity has power to maintain the *status quo* by injunction pending suit at law to establish such right.

On final hearing on information and answer.

*Mr. Thomas F. McCran,* attorney-general, and *Mr. William Newcorn,* assistant attorney-general, for the State of New Jersey.

*Messrs. Lindabury, Depue & Faulks* and *Mr. Josiah Stryker,* for the defendant.

WALKER, CHANCELLOR.

So much of the pleadings as are necessary to an understanding of the questions decided, are as follows:

The information sets out that by virtue of an act of the legislature entitled "An act to incorporate the American

Telegraph Company," approved March 23d, 1859, that company was created a body corporate, subject to the general restrictions and liabilities set forth in "An act concerning corporations," approved February 14th, 1846, so far as the same were applicable; that the capital stock should represent the telegraph lines, patent rights and other property owned by the companies called the American Telegraph Company and the New York and Washington Printing Telegraph Company, each of which companies had a telegraph line running through this and other states; that the company was empowered to construct or purchase, hold, use and maintain any line or lines of electric telegraph, with the appurtenances, whether wholly within, or wholly beyond, or partly within or partly beyond, the limits of this state, or to purchase or to take any lease of or other interest, legal or equitable, in such line or lines, in whole or in part, of the stocks of any telegraph company, and from time to time to discontinue such line or lines or any part thereof, or to change the routes thereof, or any part thereof, to purchase any patent or patents, or any share thereof, or interest therein * * *, sell, assign, convey, mortgage, lease or otherwise dispose of any of the property held by the company, as the board of directors might from time to time determine; that the company was authorized to take, hold, use and maintain the lines of telegraph then existing in this state and worked by the said companies named in the second section of the act, and was authorized to erect, construct and maintain, from time to time, the necessary fixtures for the same or any other lines of telegraph over or under any of the public roads, streets and highways, and through, across or under any of the waters within the limits of this state. By the ninth section of the act it was provided:

"That it shall be the duty of the said company, at all proper times, without charge, on the request of any public officer of this state, to transmit (confidentially, if required) messages relating to the public business thereof, and also at all times to assist the public officers of the state by the transmission of intelligence."

The information further shows that after the incorporation of the American Company it continued to operate lines already existing in this state and owned by the corporations set forth in the second paragraph of its act of incorporation, and extended its lines on the authority thus conferred; and, in compliance with the provision contained in the ninth section, received public messages from public officers and transmitted them over its lines; that the Western Union Telegraph Company, the defendant, incorporated by that name by the legislature of the State of New York in 1856, prior to July 25th, 1866, consolidated with the United States and the American Telegraph Compaines, under which consolidation the Western Union operated the lines of the American Company within the State of New Jersey, receiving and transmitting messages both intrastate and interstate, and assumed the contractual relationship existing between the American Company and the State of New Jersey, under the provisions of section 9 of the act under which it was incorporated, and issued its franks to the public officers of the state for the transmission of messages relating to the public business thereof, not only in the State of New Jersey but also between the points over which the lines of the company were extended, to wit, Boston and Washington, until on or about the 7th day of November, 1913, when the corporation, without authority therefor, limited its franks thereafter issued, until the 1st day of January, 1922, to messages to be transmitted within the State of New Jersey; that on November 5th, 1921, the American Telegraph Company filed its certificate, under the provisions of "An act concerning corporations." (Revision of 1896), whereby it dissolved its corporate existence and a certificate of dissolution was issued by the secretary of the state on that date; that notwithstanding such dissolution the Western Union continues to exercise the franchises, privileges and other powers acquired by it at the time when it consolidated with or absorbed the privileges and franchises and assumed the duties of the American Company, continuing to have, hold, use, exercise and enjoy the franchise, and other property, of the

American Company without legal warrant or authority from this state, and refusing to carry out the contractual obligation entered into by the American Company at the time of its corporation, and assumed by the Western Union, to transmit public messages from public officers, as in the act of its incorporation provided;' that notwithstanding the statutory duty placed upon the American Company, which was absorbed by or consolidated into the Western Union, and assumed by it, the Western Union since January 1st, 1922, has refused to transmit without charge messages delivered by public officers relating to the public business of the state, and still refuses so to do; that the Western Union by the acquisition of the stock of the American Company became obligated to perform the duty imposed upon the American Company and that the refusal upon the part of the former to carry out the terms of the obligation imposed upon the American Company is contrary to law, equity and good conscience; that on February 7th, 1922, the attorney-general filed an information of *quo warranto* in the office of the clerk of the supreme court, praying for an inquiry by what right the Western Union continues to exercise the franchises, privileges and other powers acquired by it at the time when it consolidated or absorbed the privileges and franchises and duties of the American Company, and by what right they refuse to carry out the contractual obligation entered into by the American Company, and that during the pendency of said suit, and, until the determination thereof, the Western Union should be restrained from refusing to receive and transmit public messages from public officers without charge therefor.

The prayer of the information is for a mandatory injunction to compel the Western Union to continue the service to the state officers which it assumed and carried on as above set out.

The answer of the Western Union admits that the American Company, after its incorporation and until June 14th, 1866, continued to operate the telegraph lines previously owned by the corporation mentioned in the second paragraph of the original act of incorporation, and that between those

dates the lines of the American Company were extended on the authority conferred by the act; that it has no knowledge or information sufficient to form a belief as to whether the American Company received public messages from public officials and transmitted them over its lines in compliance with the provisions contained in section 9 of said act and in accordance with the contract entered into between the state and the corporation at the time of the passage of the act; that on February 27th, 1866, it consolidated with the United States Telegraph Company, a corporation organized under the laws of New York by authority of the legislature of that state; that the American Company was in no way involved in, or connected with, that consolidation; that on June 12th, 1866, it made an agreement with the American Company (a copy of which is annexed to the answer), under and by virtue of which the American Company granted, leased and conveyed to the Western Union the right to take the possession, use, management and control of all the lines of telegraph, owned, leased, operated or controlled by the American Company, wherever situated, also all wires, materials, grants, property and right to property of every description, to which the American Company was then or might thereafter be entitled, and also all franchises so far as they could be lawfully transferred, and to use, operate and enjoy the same as the Western Union might deem to be for the benefit of the interests involved, it to assume and be responsible for all the debts, liabilities and legal obligations whatsoever of the American Company, it being the purpose and intention of the agreement to substitute the Western Union for the American Company in the control and management of all of the property, rights and interests of the American Company, and as to any and all legal obligations then existing or which might thereafter exist from any contract to which the American Company was a party; that stipulation to be deemed for the benefit of any and all parties to legal contracts with the American Company, who might elect to accept performance by the Western Union as a substituted party thereto.

The answer further admits that the Western Union assumed the contractual obligations of the American Company in the manner and to the extent stated in said agreement; that it issued its franks to the public officers of this state for the transmission of messages relating to the public business thereof, not only in the State of New Jersey, but also between the points over which the lines of the American Company had been extended previous to June 14th, 1866, to wit, between Boston and Washington, and that the franks issued subsequent to November 7th, 1913, were limited to public messages within the State of New Jersey; that on November 5th, 1921, the American Company filed its certificate of dissolution and received a certificate thereof issued by the Secretary of State; that since said dissolution the Western Union has continued in possession and operation of the property therein, the privileges, powers and franchises of the American Company; that since January 1st, 1922, and until February 7th, 1923, it refused to transmit without charge messages delivered by public officers relating to the public business of the State of New Jersey, and that since that date it has transmitted such messages within the state without charge solely because of the restraining order of this court.

Here follows the averment of divers and sundry matters by way of defence to the information, but which are not necessary to be set out because the decision at which I have arrived is not affected by them. And the answer concludes with the averment that the defendant conducts its business in this state under the rights and privileges granted by the post roads act of congress of the United States of 1866, and not under or pursuant to any rights or privileges granted by this state in the charter of the American Company; and that all of those rights, privileges and franchises expired upon the dissolution of the American Company, and that the Western Union is under no obligation to transmit messages for officers of New Jersey without charge, and that to compel it so to do would be to deprive it of its property without due process of law.

Here follows an averment that such compulsion would be violative of certain provisions of the constitution of the United States and of this state, naming them.

By amendment the attorney-general has added to paragraph 12 of the information an allegation that the proceedings to dissolve the American Company were an attempt on the part of that company and the Western Union to relieve the latter of its obligation under the contract between the State of New Jersey and the American Company, thereby depriving this state of its property right in the contract, and he prays that the certificate of dissolution be vacated. To this the Western Union answering, avers that the result of the dissolution of the American Company is to release it from any further obligation to transmit messages for officers of the State of New Jersey free of charge, and that such dissolution occurred in all respects in accordance with the requirements of law and is valid and legal and did not deprive this state of any property right.

On filing the information an order was made on the Western Union to show cause why an injunction should not issue as prayed for, and, in the meantime, an *ad interim* stay was granted. On the hearing of the order to show cause it was made absolute upon the ground that the situation bore a strong analogy to the doctrine that where rights which have been established at law before being protected in equity, have been enjoyed without interruption for a long period of years, the complainant is entitled to an injunction. *22 Cyc. 820.* It is to be noted that the right asserted had been enjoyed continuously for about fifty-six years when it was interrupted by the Western Union's action. The status being thus preserved on interlocutory proceedings, the case came on for final hearing on information and answer, by stipulation of the parties signed and filed in the cause. And on a hearing upon bill (or information) and answer the *facts* well pleaded in the answer are to be taken as true. See *Doremus* v. *Cameron, 49 N. J. Eq. 1; Neptune Fisheries Co.* v. *Cape May R. E. Co., 89 N. J. Eq. 552.*

It is argued on behalf of the Western Union that the answer denies the allegation that the informant is without remedy at law. This is true. And while it may be insufficient as a pleading because it does not claim or pray the benefit of a demurrer, the informant makes no objection on that particular score, while insisting that this court has jurisdiction. Proper pleading requires the defendant to pray the same benefit of the averment of want of jurisdiction as he would have been entitled to on demurrer. *Reed* v. *Cumberland Insurance Co., 36 N. J. Eq. 147; Redrow* v. *Sparks, 75 N. J. Eq. 396.* The point will now be considered.

This question is important and fundamental. The claim made on behalf of the Western Union is, that the remedy, if any, is not equitable, and consists in the assertion that *mandamus,* and not injunction, is the proper remedy, assuming that the complainant is entitled to relief. The informant answers this by the assertion that the liability of the Western Union arises out of its contract with the American Company to assume and be responsible for all the debts, liabilities and legal obligations whatsoever of the American Company, it being the purpose and intention of the agreement to substitute the Western Union for the American Company in the control and management of all the property, rights and interests of the American Company then subsisting or which might thereafter arise from any contract to which the American Company was a party. This contract is one between the Western Union and the American Company, but, in my opinion, as between the Western Union and the State of New Jersey, the duty is one enjoined by statute, for the statute laid it upon the American Company, and the Western Union continued to perform it because in taking over the assets of the American, it, along with the benefits received, necessarily assumed the obligations, one of which was to the state under the statute mentioned. And it is doubtless also a contract in the sense that there was a contract between the state and the American Company, the obligations of which were assumed by the Western Union, but that, nevertheless, does not take from the service due the element of statutory

obligation. This is not a question of the assignment and conveyance of a franchise by one corporation to another, but is the obligation by one corporation taking over the entire property of another, to perform the duties of that other, especially one enjoined by statute. There is a line of cases which hold that a corporation in debt cannot by alienating its property prevent the application of it to the satisfaction of the company's obligations, and that payment of such debts by the alienee will be decreed to be made out of the transferred property. There is an analogy between a service due and money due.

In *Hamilton Township* v. *Mercer County, Traction Co., 90 N. J. Law 531,* Mr. Justice Swayze, speaking for the court of errors and appeals, said (at *p. 534*) that the writ of *mandamus* is used to enforce a *public duty* which may sometimes grow out of a contract as well as out of a statute, citing cases. The duty in the case at bar is a public one because it required the American Company to transmit messages of any public officer of the state relating to the public business thereof, without charge.

In *Board of Railroad Commissioners* v. *Delaware, Lackawanna and Western Railroad Co., 79 N. J. Law 219,* the board of railroad commissioners made an order directing the Delaware, Lackawanna and Western Railroad Company to re-establish an abandoned station, and sought to enforce it by *mandamus.* The act provided *inter alia* that upon failure of the company to comply with the order of the board the attorney-general should institute proceedings to enforce the order in equity, *mandamus,* injunction, receivership, or other civil remedy. And Chief-Justice Gummere, speaking for the supreme court, observed (at *p. 222*) that the proper proceedings for compelling a *quasi*-public corporation to perform duties imposed upon it by statute, is *mandamus;* and the case holds that to deny the remedy by *mandamus* would be to take away from the supreme court one of its prerogative powers—its control of such writs. Vice-Chancellor Backes cites this case in his opinion in *State* v. *Elizabethtown Water Co., 83 N. J. Eq. 216,* in which he held that unless *mandamus*

19

is inadequate for the purpose, equity has no jurisdiction to compel the performance of a statutory duty by mandatory injunction. It seems hardly necessary to mention the fact that defendant here is a *quasi*-public corporation.

In this last case the attorney-general sought information by petition, under *P. L. 1912 p. 557*, amended, *P. L. 1913 p. 206*, as to whether it would be advisable in the conservation of the potable waters of the state to acquire by condemnation the water plant of the respondent, demanding of the respondent permission to enter upon its property in order to make a physical examination and to get access to its books and accounts, which was refused. The act in question gave a right to the information sought and provided that compliance might be compelled in a court of competent jurisdiction, but relief was denied and the petition dismissed because the proper remedy was *mandamus*.

The informant contends that this court having assumed jurisdiction, and the defendant having submitted the case to the court on its merits by answer filed, is estopped from questioning the jurisdiction.

In *Lehigh Zinc and Iron Co.* v. *Trotter, 43 N. J. Eq. 185*, the court of errors and appeals held (at *p. 204*) that the bill was not demurred to, and no objection was taken in the answer to the jurisdiction of the court, and, after depositions were taken, objection that the complainant had an adequate remedy at law came too late; that the court, on its own motion, may dismiss a bill at any stage of the cause on the ground that the complainant has an adequate remedy at law; but where defendant has not raised the objection until after testimony on the merits has been taken, the court, in its discretion, will retain the cause *if it is competent to grant the relief prayed for and has jurisdiction of the subject-matter,* citing cases. It is true that the court of errors and appeals afterwards, in the case of *Polhemus* v. *Holland Trust Co., 61 N. J. Eq. 654,* held that answering fully on the merits submits the defendant to the jurisdiction of the court, notwithstanding any objection to *jurisdiction over the defendant* reserved in the answer. The case of *Lehigh Zinc and Iron Co.* v. *Trotter* was not mentioned, and it is plain that

the *Polhemus Case* is to be distinguished from it, for in the latter case the only question was as to whether jurisdiction had been acquired over the person of the defendant. The case at bar falls within the doctrine enunciated in the case of *Lehigh Zinc and Iron Co.* v. *Trotter,* because here, as I view it, *mandamus* would be the remedy, and, if I am right, then this court lacks jurisdiction of the subject matter and is incompetent to grant the relief prayed. In this case it is not a question of jurisdiction over the defendant, but over the subject matter of the suit.

I am not unmindful of the fact that the informant has commenced *quo warranto* proceedings in the supreme court against the Western Union to ascertain by what right it exercises its corporate franchises, and that he had not commenced a suit by *mandamus* to compel the performance of the service claimed to be due by the Western Union. This suit is for an injunction stated to be in aid of the informant's suit at law and to preserve the *status quo pendente lite.*

In *Borough of Washington* v. *Washington Water Co.,* 70 *N. J. Eq. 254,* Vice-Chancellor Emery observed (at *p. 255*) : "The claim for water heretofore supplied is altogether legal in its nature, and an action brought solely for the purpose of recovering a reasonable sum for past services, or of determining what is such reasonable sum, is not within the equity jurisdiction. But such jurisdiction exists to maintain the *status quo* and require the continuance of the supply pending the settlement of the question of reasonable price for past supply."

While the views above expressed lead to the conclusion that the informant is not entitled to a mandatory injunction compelling the service mentioned, because it appears that there is an adequate remedy at law, nevertheless, I think that the existing injunction should be continued to preserve the *status* pending the *quo warranto* suit at law; for, it seems to me, the *status* should be preserved *pendente lite* no matter what the character of the lawsuit, provided it touches vitally the duty claimed and denied, and which, but for injunction, would not be performed during the litigation over it.

Decree accordingly.