Second District—January, 1925.          387

Public Service Co. of North. Ill. v. McCloskey, 235 Ill. App. 387.

# Public Service Company of Northern Illinois, Appellant, v. Henry J. McCloskey, Appellee.

## Gen. No. 7,368.

1. APPEAL AND ERROR—*refusal to consider unnecessary questions on appeal.* On appeal from a decree in equity dismissing a bill for want of equity where the decree does not indicate whether the bill was properly verified or not, if the bill is lacking in equity appearing on its face it is unnecessary to consider whether the court erred in denying appellant's motion to amend the affidavit verifying the bill.

2. TRESPASS—*placing poles and wires on private property without owner's permission by mistake as trespass.* When appellant strung its electric wires and poles across appellee's land without permission and without paying compensation therefor it deprived him of the free and uninterrupted possession of his property without warrant of law and constituted a trespass though they were placed there under a mistaken belief that a right of way had been secured.

3. EASEMENTS—*prescriptive right to maintain electric wires over land of another not acquirable by mere lapse of time.* Under Cahill's Ill. St. ch. 134, ¶ 20, the mere lapse of time does not raise a presumption of a grant or justify a prescriptive right to maintain electric wires over the land of another.

4. INJUNCTIONS—*verdict in ejectment as notice to trespasser of want of right to maintain electric wires.* Where an ejectment suit was begun by appellee against appellant because of the erection and maintenance of poles and electric wires across appellee's land and there was a verdict for appellee, it was sufficient to put appellant upon notice that it had no right to maintain its wires over the premises though a new trial was granted and no further proceedings were taken in the case; and such notice deprives appellant of any equity to injunction against interference with its wires or prosecution of the ejectment action.

5. INJUNCTIONS—*delay in setting condemnation cause as bar to injunction against interference.* Under section 5 of the Eminent Domain Act, Cahill's Ill. St. ch. 47, ¶ 5, providing that condemnation cases may be heard in vacation as well as in term time and section 21 of the Practice Act, Cahill's Ill. St. ch. 110, ¶ 21, providing that cases shall be tried or otherwise disposed of in the order they are placed on the docket unless the court, for good and sufficient cause, shall otherwise direct, an allegation in a

bill for an injunction against interference with appellant's wires that it repeatedly tried to get a condemnation case set for hearing but that counsel for appellee successfully opposed its efforts, was insufficient to excuse a delay of seven years in bringing such condemnation case to trial, there being no allegation of any request to the court or of any refusal by the court to set the case for trial.

6. INJUNCTIONS—*when temporary injunction properly dissolved and bill properly dismissed for want of equity.* Where an electric company in stringing its wires over appellee's land was a trespasser, though perhaps not a wilful one, from the beginning and was guilty of laches and unreasonable delay in not taking steps to secure a right of way, the chancellor properly dissolved a temporary injunction and dismissed appellant's bill to enjoin appellee from forcibly preventing appellant from repairing such wires.

Appeal by plaintiff from the Circuit Court of Grundy county; the Hon. S. C. STOUGH, Judge, presiding. Heard in this court at the April term, 1924. Affirmed. Opinion filed January 31, 1925.

EDGAR B. ELDER and H. B. SMITH, for appellant.

HAYES, MUNTS & YOUNG, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellant, Public Service Company of Northern Illinois, a corporation, filed its bill in the circuit court of Grundy county for an injunction restraining appellee, Henry J. McCloskey, from interfering with appellant in making repairs upon its poles and wires over the lands of appellee, and from interfering with the property of appellant and the conduct of its business. A temporary injunction was issued. Appellee filed an answer denying the material allegations of the bill, with the exception that he neither affirmed nor denied the charge that appellee had prevented the agents of appellant from going upon the premises to make repairs; neither did he deny any of the matters contained in the exhibits attached to the bill. After the answer was filed the appellee made an oral

motion to dissolve the temporary injunction for want of equity appearing upon the face of the bill. Following the argument upon this motion, appellant made a motion to amend the verification of the bill which motion was overruled. The court dissolved the temporary injunction for want of equity appearing on the face of the bill and the bill was dismissed. Appellee filed a suggestion of damages which was reserved for the further consideration of the court and this appeal was prosecuted.

The bill sets up substantially the following facts: Appellant is a public utility corporation, organized under the laws of Illinois, engaged in manufacturing and distributing electric current for about fifteen counties in the northern part of Illinois, serving the cities of Joliet, Wilmington, Morris, Streator, and other cities. Since 1911, it has maintained a high-voltage transmission line carrying 33,000 volts of electric current extending from Joliet by way of Wilmington to Streator, which current supplies approximately 9,300 customers. Prior to the construction of this line, appellant secured from the property owners written permission to set its poles and string wires over the lands of the respective owners. Its line was erected in 1911 and has been in operation since that time. The line passes over the southeast quarter of section 32, township 32 north, range 6 east of the third principal meridian, in Grundy county, along the southeasterly side of The Atchison, Topeka & Sante Fe Railway, and parallel thereto. During 1910 and 1911, the appellee, Henry J. McCloskey, was the owner of the north half of said southeast quarter, and Jane McCloskey, his wife, was the owner of the south half thereof. At the time the permit for the construction was secured, appellant was under the impression that its right of way was wholly within the south half of said southeast quarter, but was mistaken and the right of way extended over the south-

Public Service Co. of North. Ill. v. McCloskey, 235 Ill. App. 387.

east corner of the north half, the space occupied being about one-fourteenth of an acre. Appellant secured from Jane McCloskey her written permission to construct the line across the south half, and pursuant to this permission, constructed its line across the southeast quarter of said section. In February, 1914, Henry J. McCloskey instituted an ejectment suit against appellant to compel appellant to remove three poles located upon his land in the north half of the southeast quarter. Appellant claims that for the first time it then learned that three of its poles were upon the property of McCloskey, and that it had failed to secure the permission of McCloskey to so place its poles. In March, 1915, the ejectment suit was tried, there was judgment for the plaintiff, a new trial was granted, and the case is still pending. Appellant then entered into negotiations with McCloskey for a settlement but the negotiations were unsuccessful. Appellant then applied to the Public Utilities Commission of Illinois for a certificate to institute a suit to condemn the property of McCloskey and on January 13, 1916, such a certificate was issued. On March 31, 1916, appellant instituted in the circuit court of Grundy county a condemnation suit to condemn this land. The bill alleges that appellant is informed by its attorney, Edgar B. Elder, whose affidavit is attached to the bill, marked "Exhibit C," that he had endeavored repeatedly to have this condemnation suit set for trial, but the attorneys for McCloskey had steadily opposed the effort with the result that the suit is still pending. In March, 1923, appellant began negotiations with the attorney for McCloskey to effect a settlement of the condemnation and ejectment suits, and the attorney informed appellant that he had been unable to induce McCloskey to take up the question of settlement and suggested that the condemnation case be placed upon the trial call for the June term, 1923, as he believed this would be the

Public Service Co. of North. Ill. v. McCloskey, 235 Ill. App. 387.

means of bringing McCloskey to his office and the settlement could be discussed. The condemnation suit was set for trial for June 11, 1923. On June 9, 1923, appellant was informed by the attorney for McCloskey of a proposition of settlement, which appellant claims was of a sort which could not be considered. The attorney for McCloskey thereupon insisted upon going to trial on June 11, 1923, but appellant had not understood the case was to be tried at that time in case a settlement was not effected, was not prepared for trial, and on motion of appellant the case was continued until the September term of court. The bill alleges that it is the intention of appellant to insist upon immediate trial.

The bill alleges that on June 3, 1923, one of the wires attached to the three poles located upon the land of McCloskey broke. The break was discovered by appellant's trouble man, Leese, who filed an affidavit attached to the bill marked "Exhibit D." Leese attempted to repair the break, but was ordered off the premises by McCloskey who was armed with a gun and threatened to shoot Leese if he made an attempt to go near the pole. Thereupon appellant sent its line foreman, Roberts, who filed an affidavit attached to the bill, marked "Exhibit E," to the place where the break had occurred for the purpose of repairing the wire. He found McCloskey still armed and in a threatening manner he ordered Roberts to stay off the property. Roberts finally induced McCloskey to permit him to fish the broken line over on the railroad right of way without going upon the premises, and Roberts drew the broken wire off of the premises of McCloskey and connected it temporarily to a pole upon the railroad right of way, where it is still attached. It is alleged that this wire is not securely attached and there is constant danger that it may again break and become entangled with other wires, that other wires and insulators on the same poles may

break, and if either of these things should occur, there is every probability of great irreparable damage both to life and to property; that said transmission wire is a source of constant danger to the public having occasion to pass along the highway, and to persons traveling upon the railroad, and to the wires of the telegraph company located thereupon; that it is absolutely necessary that said electric transmission lines be kept constantly in operation for the benefit of the inhabitants served, and that great and irreparable loss will result unless appellant is permitted to make the necessary repairs; that appellant has sustained and will sustain irreparable loss and damage unless it is permitted to make such repairs; that McCloskey has repeatedly threatened to shoot, and to use physical violence, if any representative of appellant ventures upon said premises.

The prayer of the bill is that McCloskey be restrained from interfering with appellant in making necessary repairs, and from interfering with the property of appellant and the conduct of its business. Attached to the bill is a plat of the ground, an order of the Public Utilities Commission granting permission to begin condemnation proceedings, the affidavit of Edgar B. Elder with reference to the trial of the condemnation case, and the affidavits of Leese and Roberts with reference to their attempts to fix the wire.

The verification of the bill is by Julius L. Hecht and alleges "that he is Vice President of the Public Service Company of Northern Illinois, and that he has read the foregoing bill of complaint by him subscribed; that he knows the contents thereof and that the matters and things therein contained are true in substance and in fact, except as to such matters as are therein expressly stated upon information and belief, and except also as to such matters as are supported by affidavits to this bill of complaint attached, and as to these, he believes them to be true."

Counsel have argued at considerable length the questions as to whether the bill was properly verified; whether the question of verification was properly before the court; and whether the court properly denied the motion of appellant to amend the affidavit verifying the bill.

We cannot tell from the decree whether the chancellor held that the bill was properly verified or not. All the decree recites is that the injunction is dissolved and the bill dismissed for want of equity appearing on the face of the bill. Under this decree, the chancellor may have held that the bill was properly verified but was otherwise without equity. Even if the bill was properly verified, or could have been properly verified by amendment, and the court improperly refused leave to amend the affidavit, and the bill was otherwise lacking in equity appearing on its face, the bill would have to be dismissed. We think this condition exists and it will be unnecessary to consider the question of verification, or the right to amend, but we will consider the bill upon its merits and determine whether or not it is sufficient to entitle the appellant to the relief prayed.

Under the allegations of the bill, appellee was the owner in fee of the land in controversy. As such owner, he was entitled to the peaceable and uninterrupted possession and enjoyment of the entire property without interference from the appellant. Article 2, sec. 13 of the Constitution provides that private property shall not be taken or damaged for public use without just compensation. Notwithstanding this constitutional provision and the rights of appellee thereunder, in 1911, appellant invaded that right and strung its wires and poles across this land without permission from appellee and without paying compensation therefor. By so doing it deprived appellee of the free and uninterrupted possession of his property without warrant of law. It has been held

that when an electric light company erects poles, or strings wires, not for the purpose of lighting public ways and places, but for the purpose of supplying light to private individuals and firms in the transaction of its own corporate and commercial business, such erection of poles and stringing of wires constitute an additional easement and burden on the property for which the owner of the fee may demand compensation. *Board of Trade Tel. Co. v. Barnett*, 107 Ill. 507; *Postal Tel.-Cable Co. v. Eaton*, 170 Ill. 513; *Carpenter v. Capital Electric Co.*, 178 Ill. 29. The mere fact that the wires and poles were placed on the land under a mistaken belief of appellant that it had secured the right of way did not change the legal effect of that act. The legal effect was to make the appellant a trespasser. *Postal Tel.-Cable Co. of America v. Nolan*, 53 Mont. 129, 162 Pac. 169; *Windfall Natural G., Elec. & Oil Co. v. Terwilliger*, 152 Ind. 364, 53 N. E. 284; *Muncie Elec. Light Co. v. Joliff*, 59 Ind. App. 349, 109 N. E. 433; *Morris & E. R. Co. v. Hudson Tunnel R. Co.*, 25 N. J. Eq. 384; *Williamson v. Wayland Oil & Gas Co.*, 79 W. Va. 754, 92 S. E. 424; *Bumpus v. Ohio Cities Gas Co.*, 86 W. Va. 227, 103 S. E. 62; 32 Corpus Juris, p. 121, sec. 145. These authorities hold that a trespasser is not entitled to an injunction against the owner of the fee. It has also been held that the maintenance and use of telephone or electric light lines and the addition of new cross-arms, wires and insulators constitute a continuing trespass which equity has jurisdiction to prevent by injunction on a bill filed by the injured owner. *Russell v. Chicago & M. Elec. R. Co.*, 205 Ill. 155; *Burrall v. American Tel. & Tel. Co.*, 224 Ill. 266. The magnitude of the interest of the person who committed the trespass is not material as far as the granting of an injunction is concerned. *Carpenter v. Capital Elec. Co.*, 178 Ill. 29; *Garth Lumber & Shingle Co. v. Johnson*, 151 Mich. 205.

Section 20, ch. 134, of the statute (Smith Statute 1923, page 2077) [Cahill's Ill. St. ch. 134, ¶ 20] provides that whenever any wire, pole or cable used for any telegraph, telephone or electric light or other electric purpose, or for the purpose of connection, is or shall be attached to, or does and shall extend upon or over any building or land, no lapse of time whatever shall raise the presumption of any grant of, or justify a prescriptive right to, such attachment or extension. Under this statute the mere lapse of time does not raise a presumption of a grant or justify a prescriptive right over the land of appellee. If there was a mistake in erecting these wires, it is apparent that it was discovered as early as February, 1914, at which time appellee began the ejectment suit. This case was tried and there was a verdict for appellee. A new trial was granted. Why it was granted does not appear from the bill. It might have been upon payment of costs as provided in section 35, ch. 45 of the statute [Cahill's Ill. St. ch. 45, ¶ 35]. There were no further proceedings in the case after the new trial was granted, but this was sufficient to put the appellant upon notice that it had no right to maintain its wires over the premises of appellee. The bill alleges there were negotiations for settlement after this time, but no agreement was reached, and finally on January 13, 1916, the Public Utilities Commission granted appellant a certificate of convenience and necessity to condemn the land, and within sixty days a suit was commenced to condemn, but it was never tried, although over seven years have elapsed from the time of the commencement of that suit and the filing of the bill for injunction in this case. Appellant seeks to excuse this delay by alleging that it has repeatedly tried to get the case set for hearing, but that counsel for appellee successfully opposed the efforts so to do. Section 5 of the Eminent Domain Act [Cahill's Ill. St. ch.

47, ¶ 5] provides that condemnation cases may be heard in vacation as well as in term time. Therefore it was not necessary for appellant to wait for a regular term of court before its case could be tried. Section 21 of the Practice Act [Cahill's Ill. St. ch. 110, ¶ 21] provides that all causes shall be tried or otherwise disposed of in the order they are placed on the docket unless the court for good and sufficient cause shall otherwise direct. Whether or not a case shall be tried does not depend upon the will or the pleasure of the attorneys in the case but depends upon the order of the court. There is no allegation in the bill of any appeal to the court, or of any refusal by the court, to set the case for trial. For these reasons we do not think the bill was sufficient to show that appellant could not get his case tried, therefore there is no excuse for this delay.

It is conceded by appellant that while equity will not adjudicate a title or a right cognizable at law in a bill for an injunction, yet it is contended that equity will protect the property involved by injunction pending the litigation of the title, and an injunction will issue where great interests are involved, or the public welfare is at stake. In support of this contention the following cases are cited: *Louisville & N. R. Co. v. Western Union Tel. Co.*, 124 C. C. A. 573; *Atlantic & O. Tel. Co. v. Philadelphia, G. & N. Ry. Co.*, 8 Phila. 246; *Robbins v. Battle House Co.*, 74 Ala. 449; *Johnson v. Hughes*, 58 N. J. Eq. 406; *Mobile & B. R. Co. v. Louisville & N. R. Co.*, 190 Ala. 417; *McCroan v. Western Union Tel. Co.*, 94 N. J. Eq. 281, 120 Atl. 515.

In 32 Corpus Juris 124, the rule is stated as follows: "The protection of property from damage or destruction pending litigation is an established head of equity. The court does not undertake to settle the right, but merely to preserve the property until the right is settled at law. Pending the suit in equity,

or an action at law, or pending special proceedings, such as quo warranto, or condemnation proceedings, or a contest before the land department, an injunction may be granted to preserve *in status quo* the property involved until a final settlement of the right of title; and where a proper case is made for the allowance of such an injunction, it is an abuse of discretion to refuse it.'' This rule is not applicable to the facts set out in this bill. Under the facts alleged, appellant never had title, or claim of title. It was a trespasser from the beginning. Even conceding that its trespass was not wilful, but was by mistake, appellant took no steps until 1916 to acquire title or to begin a suit. Five years elapsed after the trespass was committed before any steps were taken to acquire title. Since the condemnation suit was filed seven years have elapsed and that case has never been tried. Appellee was under no obligation to bring a suit to dispossess appellant if he did not see fit so to do, but when the wire broke he had the right to prevent appellant by force from going on to the land to make repairs. Before appellant will be entitled to an injunction, it must be shown that it has some right which it can enforce or some equity which would justify the court in assuming jurisdiction. Appellant was a trespasser, was guilty of laches and unreasonable delay in not taking steps to secure a right of way. From all the facts set out in the bill, it is apparent that the equities were not in favor of the appellant and the chancellor was not in error in dissolving the injunction and dismissing the bill. For these reasons the decree will be affirmed.

*Decree affirmed.*